1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STEVEN HORN, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff*, | **COMPLAINT—CLASS ACTION** |
| *v.* | **JURY DEMAND** |
| AMAZON.COM, INC., a Delaware corporation, | |
| *Defendant.* | |

    Plaintiff Steven Horn brings this Class Action Complaint against Defendant Amazon.com, Inc. seeking restitution, damages, injunctive relief, and other appropriate relief from Amazon's ongoing participation in an illegal internet gambling enterprise. Plaintiff alleges as follows:

## <u>INTRODUCTION</u>

    1.    Over the last decade, the world's leading Las Vegas slot machine makers have teamed up with technology start-ups to develop a new product line: so-called "social casinos."

    2.    Social casinos are apps, playable from smartphones, tablets, and internet browsers, that make the experience of slot machine gambling available to consumers anywhere and anytime.

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300 • Fax: 415 373 9435

By moving their casino games directly onto the phones and computers of players, and by leveraging an innocuous-sounding "free-to-play" model,[1] social casino companies, along with Defendant Amazon, have found a way to smuggle slot machines into the homes of consumers throughout the United States, 24 hours a day, 7 days a week, and 365 days a year.

3.     Defendant Amazon owns and operates an app store where users can gamble on their mobile devices in Vegas-Style social casino apps. Amazon aggressively markets and distributes these social casino apps to consumers' Amazon and Android devices.

4.     Just like Las Vegas slot machines, social casinos allow users to purchase virtual "chips" in exchange for real money, and then gamble those chips at slot machine games in hopes of winning still more chips to keep gambling. In High 5 Casino, for example, players purchase virtual coins for use in betting, with set packages costing up to $99.99. But unlike Las Vegas slots, social casinos do not allow players to cash out their chips. Instead, purchased chips and won chips alike can be used only for more slot machine "spinning." *See* Figures 1-2.



(**Figure 1**, showing High 5 Casino gameplay, one of the social casinos available for download from Amazon.)

---

[1]      This term is a misnomer. It refers to a business model by which the initial download of the game is free, but companies reap huge profits by selling "in-game" items (known generally as "in-app purchases").

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300 • Fax: 415 373 9435



(**Figure 2**, showing an offer to purchase virtual currency with real money in High 5 Casino.)

5.      Nevertheless, like Las Vegas slots, social casinos are extraordinarily profitable and highly addictive. Social casinos are so lucrative because they mix the addictive aspects of traditional slot machines with the power of Amazon to leverage big data and social network pressures to identify, target, and exploit consumers prone to addictive behaviors.[2]

6.      Simply put, the social casino apps do not, and cannot, operate and profit at such a high level from these illegal games on their own. Their business of targeting, retaining, and collecting losses from addicted gamblers is inextricably entwined with Amazon. Not only does Amazon retain full control over allowing social casinos into its store, and their distribution and promotion therein, but it also shares directly in a substantial portion of the gamblers' losses, which are collected and controlled by Amazon.

7.      Because Amazon is the center for distribution and payment, social casinos gain a critical partner to retain high-spending users and collect player data, a trustworthy marketplace to conduct payment transactions, and the technological means to update their apps with targeted new content designed to keep addicted players spending money.

---

[2]      *See, e.g.*, *How social casinos leverage Facebook user data to target vulnerable gamblers*, PBS NEWSHOUR (Aug. 13, 2019), https://bit.ly/3tSHqMI.

EDELSON PC
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300 • Fax: 415 373 9435

8. In 2020 alone, consumers purchased and gambled away an estimated $6 billion in social casino virtual chips.[3]

9. By utilizing Amazon for distribution and payment, the social casinos entered into a mutually beneficial business partnership. In exchange for distributing the casino games, providing them valuable data and insight about their players, and collecting money from consumers, Amazon takes a *30-percent* commission of every wager, earning billions in revenue. By comparison, the "house" at a traditional casino only takes 1 to 15 percent, while also taking on significant risk of loss in its operation. Amazon's 30 percent take, on the other hand, is guaranteed for its ability to act as the casino "house" and broker.

10. The result (and intent) of this dangerous partnership is that consumers become addicted to social casino apps, maxing out their credit cards with purchases amounting to tens or even hundreds of thousands of dollars. Consumers addicted to social casinos suffer a variety of non-financial damages ranging from depression to divorce to attempted suicide.

11. Unsurprisingly, social casino apps are illegal under Washington gambling laws.

12. As the Ninth Circuit held in *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785 (9th Cir. 2018):

> In this appeal, we consider whether the virtual game platform "Big Fish Casino" constitutes illegal gambling under Washington law. Defendant-Appellee Churchill Downs, the game's owner and operator, has made millions of dollars off of Big Fish Casino. However, despite collecting millions in revenue, Churchill Downs, like Captain Renault in Casablanca, purports to be shocked—shocked!—to find that Big Fish Casino could constitute illegal gambling. We are not. We therefore reverse the district court and hold that because Big Fish Casino's virtual chips are a "thing of value," Big Fish Casino constitutes illegal gambling under Washington law.

13. In other words, despite knowing that social casinos are illegal, Amazon continues to maintain a 30% financial interest in the upside by brokering the slot machine games, driving

---

[3]    *Social casino market size worldwide from 2014 to 2026,* STATISTA (June 2021), https://www.statista.com/statistics/374575/social-casino-worldwide-market-size/.

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300  •  Fax: 415 373 9435

customers to them, and acting as the bank.

14.     As such, Amazon is liable as a co-conspirator to an illegal gambling enterprise and conspiracy.

15.     Defendant Amazon, for its part, is a direct participant in an informal association and enterprise of individuals and entities with the explicit purpose of knowingly devising and operating an online gambling scheme to exploit consumers and reap billions in profits (the "Social Casino Enterprise" or "Enterprise").

16.     This ongoing Enterprise necessarily promotes the success of each of its members: social casino operators need Amazon to access consumers, promote their games, and broker all payments for virtual chips. Amazon, for its part, needs developers to create profit-driven and addictive applications on its platform to generate massive revenue streams.

17.     Through this case, Plaintiff seeks to force Amazon to stop participating in, and to return to consumers the money it has illegally profited from, the Social Casino Application Enterprise.

18.     Plaintiff, on behalf of the putative Class, brings claims for damages and for injunctive relief under the Washington Return of Money Lost at Gambling Act, RCW § 4.24.070, *et seq.* ("RMLGA"), the Washington Consumer Protection Act, RCW § 19.86.010, *et seq.* ("CPA"), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO").

**PARTIES**

19.     Plaintiff Steven Horn is a natural person and a citizen of the State of Nevada.

20.     Defendant Amazon.com, Inc. is a corporation existing under the laws of the State of Delaware with its principal place of business located at 410 Terry Avenue N., Seattle, WA 98109. Amazon regularly conducts and transacts business in this District, as well as throughout the United States.

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300  •  Fax: 415 373 9435

**JURISDICTION AND VENUE**

21.     Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because (a) at least one member of the proposed class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

22.     The Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and Defendant's alleged wrongful conduct occurred in and emanated from this District.

23.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in and emanated from this District. Further, Defendant Amazon's Conditions of Use specifically require Plaintiff to bring any claims in this District and state ("any dispute or claim relating in any way to your use of any Amazon Service will be adjudicated in the state or Federal courts in King County, Washington, and you consent to exclusive jurisdiction and venue in these courts.").

**GENERAL ALLEGATIONS**

**I.      *Social Casino Applications Constitute Illegal Gambling Under Washington Law***

24.     Under Washington law, social casino applications—which are playable from smartphones, tablets, and internet browsers—constitute illegal gambling.

25.     In *Kater*, for example, the Ninth Circuit held that social casino applications are illegal under Washington law because, while users cannot win money, social casino chips are "things of value" given that they can be purchased for money, are awarded as prizes in social casino slot machines, and then can be used to allow players to keep spinning social casino slot machines.

26.     Washington aggressively regulates all forms of gambling and prohibits online gambling. One reason it does so is to prevent consumers from being cheated by professional gambling operations.

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300  •  Fax: 415 373 9435

27.     Because social casinos have previously operated as if they were not subject to gambling regulations, they do not comply with any of the regulations that govern the operation of physical casinos or slot machines.

28.     Notably, while any legitimately operated slot machine must randomize its results, social casino applications do not randomize their results. Instead, these tailor "wins" and "losses" in such a way as to maximize addiction (and, in turn, revenues). A CEO of one social casino once explained, "[o]ur games aren't built to be bulletproof like you'd need to be if you're a real gambling company. We can do things to make our games more [fun] that if you were an operator in Vegas you'd go to jail for, because we change the odds just for fun."

29.     In other words, social casinos are not just illegal under Washington law, but they would not be legal slot machines under any state law as they cheat players out of a legitimately randomized slot machine experience. Not only can players never actually win money, but their financial losses are maximized by deceptive gameplay tweaks that would never be allowed in a physical slot machine.

## II.     *Amazon Promotes, Brokers Transactions On, and Profits From Illegal Social Casinos.*

30.     Defendant Amazon has directly assisted in creating the unregulated market of virtual casino games from the outset of the industry.

31.     Before gaining access to Amazon's app distribution platform, the Illegal Slots used methods like loyalty cards to track data on how much gamblers spent, how frequently they played, or how often they bet. The Amazon partnership upgraded their business model to an in-app payment system and provided additional user data—which caused skyrocketing revenue for the Illegal Slots by providing them with access to a whole new market of consumers.

32.     The core marketing for the Illegal Slots is accomplished in concert with Amazon, and their systems are inextricably linked. For example, according to SEC filings by SciPlay Corporation ("SciPlay"), a subsidiary of Light & Wonder, Inc. (f/k/a Scientific Games Corp.) and

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300  •  Fax: 415 373 9435

operator of the Illegal Slot game Quick Hit Slots, the company "reli[es] on third-party platforms and [its] ability to track data on those platforms" in the operation of its social casino app business.[4] SciPlay's reliance on the platforms is so significant that its "expansion and prospects … depend on [its] continued relationships with these providers."[5]

33.     Access to data through these app platforms and their tools is essential to the hyper-targeted nature of the social casino business model. For example, according to li

34.     's CEO, the company uses its access to a large, platform-derived player base in order to mine them for data, analyze it, and use it to keep them addicted:

> The secret sauce of Playtika is our ability to work with AI. We know exactly when a player is going to stop playing. We know exactly when they're going to pay. We know how many times they come in each day. I can't say we can predict with 100 percent accuracy, but we can predict, for most of our players, their activities in our games. That's the real power behind the operations side. When you can predict this, you can find solutions to problems. If someone wants to move on from your game, to delete your app, you know how to handle that player. We sound the alarm. We know how to operate and make sure a player retains in the game.[6]

35.     By moving to online platforms for marketing, distribution, and payments, the Illegal Slots entered into a mutually beneficial business partnership with Defendant Amazon. In exchange for pushing and distributing the social casino apps and collecting money from consumers, Amazon takes a 30-percent commission from every in-app purchase of, and Amazon Coin redemption for, virtual chips—earning them billions in revenue.

---

[4]     SciPlay Corporation, Form 10-K at 3 (Mar. 1, 2022), https://www.sec.gov/Archives/edgar/data/1760717/000176071722000018/scpl-20220331.htm.

[5]     Light & Wonder, Inc., Form 10-K at 28 (Mar. 1, 2023), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://app.quotemedia.com/data/downloadFiling?webmasterId=90423&ref=117301795&type=PDF&symbol=LNW&companyName=Light+%26+Wonder+Inc.&formType=10-K&formDescription=Annual+report+pursuant+to+Section+13+or+15%28d%29&dateFiled=2023-03-01.

[6]     Dean Takahashi, *Playtika CEO Robert Antokol interview— Why player retention matters now,* VENTUREBEAT (Jan. 6, 2022), https://venturebeat.com/games/playtika-ceo-robert-antokol-interview-why-player-retention-matters-now/.

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300  •  Fax: 415 373 9435

36.     Prior to being featured in the Amazon Appstore, developers must submit their app for review. In this process, Amazon examines whether the app violates any company policies and demands that apps comply with all relevant laws within the jurisdiction where the app is available. Apps may be, and often are, removed at Amazon's discretion for violating its policies and can be audited at any time.

37.     Amazon purports to heavily regulate applications that involve gambling, providing a list of specific requirements that must be met by developers to permit a gambling-focused app in its Appstore. For example, Amazon prohibits apps from using its in-app purchasing to fund "an in-app wallet of real money" and requires the app to be rated as "Adult." Nevertheless, Amazon fatures and profits from social casino apps.

38.     As such, Defendant Amazon has an active role in reviewing and profiting from gambling apps. Amazon, through its app review process, is keenly aware of the illegal and deceptive nature of the Illegal Slots. Amazon knew of the unlawful nature of the Illegal Slots and nonetheless knowingly promoted the unlawful gambling apps, brokered illegal gambling payments, and reaped financial benefits from those illegal payments.

39.     Furthermore, on information and belief, in the wake of the *Kater* decision, Amazon did not remove any social casinos from its offerings, signaling that it will continue to offer illegal social casino games.

**A.     The Illegal Slots**

40.     Each of the following non-exhaustive list of social casinos, among others offered by Amazon, constitutes illegal online gambling under Washington law.

| # | Game Title | qui |
|---|---|---|
| 1 | Jackpot Party | https://www.amazon.com/Jackpot-Party-Casino-Slots-Vegas/dp/B00C7X0ZNU/ |
| 2 | Goldfish Casino Slot Games | https://www.amazon.com/Gold-Fish-Casino-Slots-HD/dp/B00KCYMAWK/ |
| 3 | MONOPOLY Slots - Casino Games | https://www.amazon.com/SG-Interactive-MONOPOLY-Slots/dp/B07229WRY6/ |

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300 • Fax: 415 373 9435

| 4 | 88 Fortunes Slots Casino Games | https://www.amazon.com/88-FortunesTM-Free-Slots-Casino/dp/B073ZLCVFY/ |
|---|---|---|
| 5 | Hot Shot Casino Slot Games | https://www.amazon.com/SG-Interactive-Shot-Casino-SlotsTM/dp/B01HBX2W2C/ |
| 6 | Lotsa Slots | https://www.amazon.com/Lotsa-Slots-Vegas-Casino-SLOTS/dp/B07PFXRD9G/ |
| 7 | Jackpot World™ - Slots Casino | https://www.amazon.com/Grande-Games-Limited-DAFUTM-Casino/dp/B07WCW5BJZ/ |
| 8 | Cash Frenzy | https://www.amazon.com/Cash-Frenzy-Casino-Slots-Games/dp/B07JHXZZKS/ |
| 9 | Vegas Friends | https://www.amazon.com/Vegas-Friends-Casino-Slots-Free/dp/B08TZV96J5/ |
| 10 | Jackpot Crush | https://www.amazon.com/Jackpot-Crush-Free-Vegas-Machines/dp/B08S2XBXBQ/ |
| 11 | POP! Slots Vegas Casino Games | https://www.amazon.com/Slots-Play-Vegas-Casino-Machines/dp/B08KTDZM1N/ |
| 12 | myVEGAS Slots | https://www.amazon.com/PlayStudios-Inc-myVEGAS-Slots/dp/B00GXH3TGG/ |
| 13 | MyKONAMI Slots | https://www.amazon.com/PlayStudios-Inc-KONAMI-Slots/dp/B016FO3PVU/ |
| 14 | Huuuge Casino Slots | https://www.amazon.com/Slots-Huuuge-Casino-Blackjack-Baccarat/dp/B015Q1RD0W/ |
| 15 | Billionaire Casino | https://www.amazon.com/Billionaire-Casino-Slots-Games-Poker/dp/B01MEGJKCD/ |
| 16 | Lightning Link Casino Slots | https://www.amazon.com/Lightning-Link-Casino-Slots-Games/dp/B07R2FPB34/ |
| 17 | Cashman Casino Las Vegas Slots | https://www.amazon.com/Product-Madness-Cashman-Casino/dp/B01HBJ4MPQ/ |
| 18 | Slots: Heart of Vegas Casino | https://www.amazon.com/Heart-Vegas-Free-Slots-Casino/dp/B0108G1FOA/ |
| 19 | Jackpot Magic Slots | https://www.amazon.com/Big-Fish-Games-Jackpot-SlotsTM/dp/B071JWLHY6/ |
| 20 | Big Fish Casino | https://www.amazon.com/Big-Fish-Casino-Vegas-Machines/dp/B0070YDOT8/ |
| 21 | Jackpot Master | https://www.amazon.com/Zeroo-Gravity-Games-LLC-MasterTM/dp/B09M3P3S83/ |
| 22 | Cash Tornado | https://www.amazon.com/Cash-Tornado-Slots-Vegas-Casino/dp/B081GVL84B/ |
| 23 | DoubleU Casino | https://www.amazon.com/DoubleU-Casino-Vegas-Bonuses-Jackpot/dp/B00KQHVWWC/ |
| 24 | Take 5 Vegas Slots | https://www.amazon.com/Take5-Vegas-Slots-Free-Casino/dp/B01N9E7GUU/ |
| 25 | Black Diamond Casino | https://www.amazon.com/Zynga-Game-Network-SLOTS-Diamond/dp/B01A7HXF7U/ |

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300  •  Fax: 415 373 9435

| 26 | Game of Thrones Slots Casino | https://www.amazon.com/Game-of-Thrones-Slots-Casino/dp/B07P6YKMV3/ |
| 27 | Hit it Rich! | https://www.amazon.com/Hit-Rich-Free-Casino-Slots/dp/B00KSOQ66K/ |
| 28 | Wizard of Oz Slots | https://www.amazon.com/Wizard-Oz-Magic-Match/dp/B01BPPA75Q/ |
| 29 | Willy Wonka Vegas Casino Slots | https://www.amazon.com/Willy-Wonka-Slots-Machines-Classic/dp/B01C381NS4/ |
| 30 | Slotomania Slots | https://www.amazon.com/Slotomania-Free-Slots-Casino-Games/dp/B007TBAQCK/ |
| 31 | Caesar's Slots | https://www.amazon.com/Caesars-Slots-Free-Casino-Games/dp/B00GMIB0O4/ |
| 32 | House of Fun | https://www.amazon.com/House-Fun-Vegas-Casino-Slots/dp/B00EC5ZFL8/ |
| 33 | Slots and Words | https://www.amazon.com/Vegas-Downtown-Slots-Machines-Puzzle/dp/B019ZRIB3Q/ |
| 34 | Quick Hit Slots | https://www.amazon.com/Quick-Hit-Slots-Free-Vegas/dp/B00XGNNN52/ |

41.     The Illegal Slots all have the same thing in common: they allow users to purchase virtual "chips" or "tokens" with real money and then gamble those chips at slot machine games in hopes of winning still more chips to keep gambling.

42.     Consumers may purchase "chips" or "tokens" directly through the Illegal Slots mobile apps.

43.     Amazon has also minted its own currency called "Amazon Coin" that consumers can purchase and redeem at the Illegal Slots for "chips" and "tokens." According to Amazon, Amazon Coins have real value and consumers "can spend them the same as cash." For example, Amazon sells 1,000 Amazon Coins for $9.70. Consumers can then redeem 199 Amazon Coins to purchase 5,600,000 chips for use at High 5 Casino, or, alternately, can directly pay High 5 Casino $1.99 for that coin package. *See* **Figure 3** below. As such, each Amazon Coin has roughly a USD value of approximately $0.01.

CLASS ACTION COMPLAINT                                          11



(**Figure 3**, showing Amazon's offer to sell Amazon coins in lieu of High 5 Casino coins.)

44.     As explained above, Amazon collects 30% of each in-app purchase and Amazon Coin redemption at the Illegal Slots.

**B.     Amazon's Brokering Of, Promotion Of, and Control Over the Illegal Slots**

45.     As a preliminary matter, Amazon heavily promotes the download of the Illegal Slots via the Amazon Appstore and encourages consumers to spend money on "chips" and "tokens." Indeed, Amazon created a category on the Amazon Appstore titled "The best casino games for Amazon Coins," indicating to consumers that they can purchase Amazon Coins and redeem its cash value on "chips" and "tokens" for use on the Illegal Slots.

46.     Amazon routinely brokers the success of the Illegal Slots by counseling the app developers through the app launch process and providing them with resources and business tools necessary to maximize their success on the Amazon Appstore. For instance, initiation on Amazon as an app developer includes immediate access to "Program Materials" including software, software development kits, libraries, application programing interfaces, sample code, templates, documentation, and more.[7]

---

[7]     *Amazon Developer Service Agreement*, AMAZON (Apr. 3, 2023), https://developer.amazon.com/support/legal/da.

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300  •  Fax: 415 373 9435

47.     The Illegal Slot companies and Amazon monitor the game activity and use the collected data to increase user spending. This access to Amazon's data is critical for the developers since all financial transactions for virtual chips occur through third-party platforms exactly like Amazon.

48.     Indeed, Amazon obtains granular data about customers' behavior on its platform and provides developers like the Illegal Slot companies such data including past purchases, browsing history, and, *inter alia*, consumer subscriptions (such as tiered levels of membership in the social casinos).[8]

49.     Because the Illegal Slots depend on the spending of a small, targeted audience, the Illegal Slot companies and Amazon work together to target and exploit high-spending users, or "whales," as Illegal Slot companies refer to their top spenders. This exploitation is intentional and openly flaunted: Zynga—one of the Illegal Slot companies—admits that "a small portion of our players have historically been payers"[9] and reveals that "[i]n order to sustain and grow our revenue levels, we must attract, retain and increase the number of paying players or more effectively monetize our players through advertising and other strategies."[10]

50.     The data that the Illegal Slot companies and Amazon collect on monetization necessarily contributes to the structure and success of the Social Casino Enterprise.

51.     Amazon encourages Illegal Slot companies to target high-spending users and activate non-users alike. Amazon aids in the design and direction of targeted advertising through its massive advertising platform which includes in-app advertising, display advertisements, video advertisements, and sponsored display advertisements—all aimed at driving new customers to the Illegal Slots and retaining current gamblers.

52.     Likewise, because it acts as the "bank" for the Illegal Slots, Amazon is entirely

---

[8]     *Reporting Overview,* AMAZON, https://developer.amazon.com/docs/reports-promo/UI-reports-dashboard html (last visited November 10, 2023).
[9]     Zynga, Inc., Form 10-K at 3 (Feb. 26, 2021), available at https://www.sec.gov/Archives/edgar/data/1439404/000156459021009477/znga-10k_20201231.htm.
[10]    *Id.* at 14.

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300  •  Fax: 415 373 9435

aware that some consumers spend *hundreds of thousands* on the Illegal Slots. Amazon's consumer spending metrics are spectacularly comprehensive: there is no high-spending consumer whose habits, buys, and losses are not intimately tracked by Amazon.

53.     Additionally, because the Illegal Slots are required to use Amazon's payment system to process all in-game purchases, Amazon collects a 30 percent portion of every transaction. As such, Amazon takes a portion of, and profits from, the same consumer cash that the Illegal Slots extract from users.

54.     If Amazon ever discovers an illegal or fraudulent transaction in breach of its terms or policies, it can deny developers from redeeming the proceeds in its active balance. And yet, the profits from Illegal Slots persist and only increase year-to-year.[11]

55.     Amazon has used its developer tools to take advantage of users with severe gambling problems and as a result, has unlawfully made billions of dollars on the backs of consumers.

### FACTS SPECIFIC TO PLAINTIFF HORN

56.     Plaintiff Steven Horn purchased virtual "chips" and "tokens" from the Illegal Slots as well as Amazon Coins which he redeemed on the Illegal Slots. When Steven Horn purchased chips or tokens or redeemed Amazon Coins at the Illegal Slots, Amazon collected 30% of the transaction value.

57.     Plaintiff Horn has been addicted to various Illegal Slots such as Take 5 Vegas Slots, Lightning Link Casino, and Quick Hit Slots.  Plaintiff Horn would often play Quick Hit Slots for several hours per day and spend large amounts of money to do so.

58.     Plaintiff Horn made over 320 digital transactions for virtual chips on the Illegal Slots between October 2022 and September 2023.

59.     Playing the Illegal Slots has had a devastating impact on Plaintiff Horn's life.

---

[11]     *Annual revenue generated by DoubleDown Interactive from 2018 to 2022*, STATISTA, April 2023, https://www.statista.com/statistics/513782/doubledown-interactive-annual-revenue/.

60.     Playing the game and its related losses has also placed a significant strain on his personal relationships and caused him great financial hardship.

## CLASS ALLEGATIONS

61.     **Class Definition:** Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All persons in the United States who purchased and lost chips by wagering at any Illegal Slots through the Amazon platform.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

62.     **Numerosity:** On information and belief, tens of thousands of consumers fall into the definition of the Class. Members of the Class can be identified through Defendant's records, discovery, and other third-party sources.

63.     **Commonality and Predominance:** There are many questions of law and fact common to Plaintiff's and the Class's claims, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

A.     Whether the Illegal Slots are illegal under Washington gambling law;

B.     Whether Defendant is liable for managing, possessing, controlling, brokering transactions on, and/or profiting from the Illegal Slots;

C.     Whether Defendant's participation in operating the Illegal Slots constitutes an unfair and/or unlawful business practice under the CPA;

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300  •  Fax: 415 373 9435

D.     Whether Defendant should be enjoined from further participation in the Social Casino Enterprise;

E.     Whether Defendant agreed to participate in the Social Casino Enterprise; and

F.     Whether Defendant agreed to commit and/or has committed illegal predicate acts under RICO, 18 U.S.C. § 1961, *et seq.*

64.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class sustained damages arising out of Defendant's wrongful conduct.

65.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class, as Plaintiff and each member of the Class lost money playing the Illegal Slots. Plaintiff also has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Class.

66.     **Policies Generally Applicable to the Class:** This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies that Plaintiff challenges apply and affect members of the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same.

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300 • Fax: 415 373 9435

67. **Superiority:** This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The harm suffered by the individual members of the Class is likely to have been relatively small compared to the burden and expense of prosecuting individual actions to redress Defendant's wrongful conduct. Absent a class action, it would be difficult for the individual members of the Class to obtain effective relief from Defendant. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

68. Plaintiff reserves the right to revise each of the foregoing allegations based on facts learned through additional investigation and in discovery.

## FIRST CAUSE OF ACTION
### Violations of Revised Code of Washington § 4.24.070
### (On behalf of Plaintiff and the Class)

69. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

70. Plaintiff, members of the Class, and Defendant are all "persons" as defined by RCW § 9.46.0289.

71. The state of Washington's "Recovery of money lost at gambling" statute, RCW § 4.24.070, provides that "all persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

72. "Gambling," defined by RCW § 9.46.0237, "means staking or risking something of

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300  •  Fax: 415 373 9435

value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence."

73.    The "chips" sold for use in the Illegal Slots are "things of value" under RCW § 9.46.0285.

74.    The Illegal Slots are illegal gambling games because they are online games at which players wager things of value (the chips), and by an element of chance (*e.g.*, by spinning an online slot machine), are able to obtain additional entertainment and extend gameplay (by winning additional chips).

75.    Defendant Amazon is a proprietor for whose benefit the Illegal Slot online gambling games are played because it realizes a significant profit from Plaintiff and the Class, who stake or risk chips in the Illegal Slot games.

76.    As such, Plaintiff and the Class gambled when they purchased chips to wager at one of the Illegal Slot company's online gambling games. Plaintiff and each member of the Class staked money, in the form of chips purchased with money, at the Illegal Slot company's games of chance for the chance of winning additional things of value (*e.g.*, chips that extend gameplay without additional charge).

77.    In addition, the Illegal Slots are not "pinball machine[s] or similar mechanical amusement device[s]" as contemplated by the statute because:

    A.  the games are electronic rather than mechanical;

    B.  the games confer replays but they are recorded and can be redeemed on separate occasions (i.e., they are not "immediate and unrecorded"); and

    C.  the games contain electronic mechanisms that vary the chance of winning free games or the number of free games which may be won (*e.g.*, the games allow for different wager amounts).

78.    RCW § 9.46.0285 states that a: "'thing of value,' as used in this chapter, means any money or property, any token, object or article exchangeable for money or property, or any form of

18                    **EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300  •  Fax: 415 373 9435

credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."

79. The "chips" Plaintiff and the Class had the chance of winning at the Illegal Slots are "things of value" under Washington law because they are credits that involve the extension of entertainment and a privilege of playing a game without charge.

80. The Illegal Slots are "Contest[s] of chance," as defined by RCW § 9.46.0225, because they are "contest[s], game[s], gaming scheme[s], or gaming device[s] in which the outcome[s] depend[] in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." The Illegal Slots are programmed to have outcomes that are determined entirely upon chance and a contestant's skill does not affect the outcomes.

81. RCW § 9.46.0201 defines "Amusement game[s]" as games where "[t]he outcome depends in a material degree upon the skill of the contestant," among other requirements. The Illegal Slots games are not "Amusement games" because their outcomes are dependent entirely upon chance and not upon the skill of the player and because the games are contests of chance, as defined by RCW § 9.46.0225.

82. As a direct and proximate result of the Illegal Slots, Plaintiff and each member of the Class have lost money wagering at the Illegal Slot companies' games of chance and enriched Defendant Amazon. Plaintiff, on behalf of himself and the Class, seeks an order awarding the recovery of all lost monies, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable.

## SECOND CAUSE OF ACTION
### Violations of the Washington Consumer Protection Act, RCW § 19.86.010, *et seq.*
### (On behalf of Plaintiff and the Class)

83. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300 • Fax: 415 373 9435

84.    Washington's Consumer Protection Act, RCW § 19.86.010, *et seq.* ("CPA"), protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

85.    To achieve that goal, the CPA prohibits any person from using "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" RCW § 19.86.020.

86.    The CPA states that "a claimant may establish that the act or practice is injurious to the public interest because it . . . [v]iolates a statute that contains a specific legislative declaration of public interest impact." *Id.* § 19.86.093.

87.    Defendant violated RCW § 9.46.010, *et seq.* which declares:

> The public policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control.
>
> It is hereby declared to be the policy of the legislature, recognizing the close relationship between professional gambling and organized crime, to restrain all persons from seeking profit from professional gambling activities in this state; to restrain all persons from patronizing such professional gambling activities; to safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling; and at the same time, both to preserve the freedom of the press and to avoid restricting participation by individuals in activities and social pastimes, which activities and social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace.

88.    Defendant has violated RCW § 9.46.010, *et seq.*, because the Illegal Slot games are illegal online gambling games which are played for Defendant's benefit as described herein.

89.    Defendant's wrongful conduct occurred in the conduct of trade or commerce— i.e., while Defendant was engaged in promoting and brokering for the Illegal Slots.

90.    Defendant's acts and practices were and are injurious to the public interest because Defendant, in the course of its business, continuously advertised to and solicited the general public

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300  •  Fax: 415 373 9435

in Washington state and throughout the United States to play the Illegal Slots. This was part of a pattern or generalized course of conduct on the part of Defendant. Many consumers have been adversely affected by Defendant's conduct and the public is at risk.

91.     Defendant has profited immensely from the operation of unlawful games of chance, amassing hundreds of millions of dollars from the losers of its games of chance.

92.     As a result of Defendant's conduct, Plaintiff and the Class members were injured in their business or property—i.e., economic injury—in that they lost money wagering on the Illegal Slots.

93.     Defendant's unfair or deceptive conduct proximately caused Plaintiff's and the Class members' injury because, but for the challenged conduct, Plaintiff and the Class members would not have lost money wagering at or on the Illegal Slots, and they did so as a direct, foreseeable, and planned consequence of that conduct.

94.     Plaintiff, on their own behalf and on behalf of the Class, seeks to enjoin further violation and recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**
**Violations of 18 U.S.C. § 1962(c)**
**Racketeering Activities and Collection of Unlawful Debts**
**(On behalf of Plaintiff and the Class)**

95.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

96.     At all relevant times, Defendant Amazon is and has been a "person" within the meaning of 18 U.S.C. § 1961(3), because it is capable of holding, and does hold, "a legal or beneficial interest in property."

97.     Plaintiff is a "person," as that term is defined in 18 U.S.C. § 1961(3), and has standing to sue as he was injured in his business and/or property as a result of the Social Casino Enterprise's wrongful conduct described herein, including but not limited to Defendant Amazon and the Illegal Slots (1) having unlawfully taken and received money from Plaintiff and the Class; (2) having never provided Plaintiff and members of the Class a fair and objective chance to win—they

21                          **EDELSON PC**
                                                                                    150 California Street, 18th Floor, San Francisco, CA 94111
                                                                                             Tel: 415 212 9300  •  Fax: 415 373 9435

could only lose; and (3) having directly and knowingly profited from, on information and belief, rigged and manipulated slot machines.

98.     Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

99.     18 U.S.C. § 1961(1) defines "racketeering activity" to include, among other things, (i) any act which is indictable under Title 18, Section 1084 of the United States Code (relating to the transmission of gambling information); and (ii) any act which is indictable under Title 18, Section 1955 of the United States Code (relating to the prohibition of illegal gambling businesses).

100.     Because illegal gambling is indictable under both Section 1084 and Section 1955 of Title 18 of the United States Code, the Social Casino Enterprise is engaged in "racketeering activity."

101.     18 U.S.C. § 1961(6) defines "unlawful debt" as a debt "(A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof," and "(B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof."

102.     Because the Social Casino Enterprise collects debts incurred from gambling activity in violation of Washington law, as described herein, its profits derived from its ownership and maintenance constitute "unlawful debt" as defined in Section 1961(6).

103.     Amazon violated 18 U.S.C. § 1962(c) and § 1962(d) by participating in, brokering, or conducting the affairs of the Social Casino Enterprise through a pattern of racketeering activity composed of indictable offenses under the Revised Code of Washington § 4.24.070 and § 19.86.010.

104.     The affiliation between the Defendant Amazon and the Illegal Slot companies constitutes a conspiracy to use an enterprise for the collection of unlawful debt in violation of 18

U.S.C. § 1962(d).

**The Social Casino Enterprise**

105.    RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

106.    Under 18 U.S.C. § 1961(4), a RICO "enterprise" may be an association-in-fact that, although it has no formal legal structure, has (i) a common purpose, (ii) relationships among those associated with the enterprise, and (iii) longevity sufficient to pursue the enterprise's purpose. *See Boyle v. United States*, 556 U.S. 938, 946 (2009).

107.    The Social Casino Enterprise is an association-in-fact composed of at least Amazon and the Illegal Slot companies who are engaged in, and whose activities affect, interstate commerce, and which have affected and damaged interstate commercial activity. This Enterprise exists separately from the otherwise legitimate business operations of each individual participant and separately from legitimate portions of Amazon's and the developers' business relationship. For example, at least some of the developers of the Illegal Slots also create legal apps that are available on Amazon's platform.

108.    The pattern of racketeering activity conducted by the members of the Social Casino Enterprise is distinct from the Social Casino Enterprise itself, as each act of racketeering is a separate offense committed by an entity while the Social Casino Enterprise itself is an association-in-fact of legal entities. The Social Casino Enterprise has an informal structure of app developers and platforms (like Amazon) with continuing functions or responsibilities.

109.    For approximately a decade, the Social Casino Enterprise has collaborated together to operate and broker transactions on Illegal Slots and to target and retain high-spending users in its online gambling scheme throughout the country.

110.    At the very latest, following the Ninth Circuit's March 28, 2018 holding in *Kater*, Defendant Amazon and the Illegal Slot companies, on information and belief, mutually agreed to

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300 • Fax: 415 373 9435

continue their Enterprise through their ongoing collection of unlawful debts, functioning as a cohesive unit with the purpose of gaining illicit gambling profits.

### Structure of the Social Casino Enterprise

111.    The Social Casino Enterprise consists of the Illegal Slot companies and Amazon. Each participant agreed to conduct and carry out the affairs and goals of the Social Casino Enterprise:

    A.  The Illegal Slot companies agreed to conduct the affairs of the Social Casino Enterprise by developing, updating, and operating the Illegal Slot machines: the "gambling devices." The Illegal Slot companies operate as the principals, forming the necessary business partnerships with Amazon for the successful execution of their unlawful gambling scheme. The Illegal Slot companies fundamentally rely on Amazon to broker their games, access consumers, and collect revenue. Upon constructive notice of the unlawful nature of the virtual social gambling applications, the Illegal Slot companies agreed with all Enterprise participants to uphold their roles in the Social Casino Enterprise and to continue functioning as a single unit with the common purpose of collecting unlawful debts from online gambling activity.

    B.  Amazon agreed to conduct the affairs of the Social Casino Enterprise by serving as the gambling premises, brokering the virtual social gambling applications and profiting from all in-app transactions in exchange for a share in the gamblers' losses. Additionally, upon notice of the unlawful nature of the virtual social gambling applications, Amazon agreed with all participants to uphold their roles in the Social Casino Enterprise and to continue functioning as a single unit with the common purpose of collecting unlawful debts from online gambling activity.

EDELSON PC
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300 • Fax: 415 373 9435

112.    At all relevant times, each Social Casino Enterprise participant was aware of the conduct of the Social Casino Enterprise, was a knowing and willing participant in that conduct, and reaped profits from that conduct through in-app sales.

113.    The persons engaged in the Social Casino Enterprise are systematically linked through contractual relationships, financial ties, and continuing coordination of activities.

114.    All members of the Social Casino Enterprise coordinate and maintain their respective roles in order to enrich themselves and to further the common interests of the whole.

115.    Each Social Casino Enterprise participant participated in the operation and management of the Social Casino Enterprise by directing its affairs as described herein.

116.    The wrongful conduct of the Social Casino Enterprise has been and remains part of the Social Casino Enterprise's ongoing way of doing business and constitutes a continuing threat to the Plaintiff's and the Class's property. Without the repeated illegal acts and intentional coordination between all participants, the Social Casino Enterprise's scheme would not have succeeded and would not pose a threat to Plaintiff and the Class into the future.

**Pattern of Racketeering Activity**

117.    The affairs of the Social Casino Enterprise were conducted in such a way as to form a pattern of racketeering activity. The Social Casino Enterprise's general pattern of activity consists of designing and operating illegal internet-based slot machines and repeatedly violating public policy against gambling by:

    A.  Developing Illegal Slot machine games and disguising them as innocuous video game entertainment;

    B.  Distributing and operating Illegal Slot machine games that are, on information and belief, rigged and manipulated;

    C.  Concealing the scope and deceptive nature of their gambling applications despite knowledge of their predatory design and business model;

    D.  Providing virtual place for unlicensed gambling activity;

EDELSON PC
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300 • Fax: 415 373 9435

E.  Injuring the public interest by continuously advertising to, and soliciting the general public to play, Illegal Slot machines;

F.  Conspiring to uphold the Social Casino Enterprise; and

G.  Unjustly collecting unlawful debts and retaining the profits from their illegal social gambling applications.

118.  Pursuant to and in furtherance of their fraudulent scheme, Amazon committed multiple predicate act violations of Washington law as previously alleged herein, including violations of RCW § 4.24.070 and § 19.86.010.

### FOURTH CAUSE OF ACTION
#### Violations of 18 U.S.C. § 1962(d)
**Conspiracy to Engage in Racketeering Actives and Collection of Unlawful Debts**
**<u>(On behalf of Plaintiff and the Class)</u>**

119.  Plaintiff incorporates by reference the foregoing allegations as fully set forth herein.

120.  18 U.S.C. § 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

121.  As described throughout, and in detail in the First Cause of Action, even if it did not direct or manage the affairs of the Social Casino Enterprise, Defendant Amazon conspired to commit predicate acts in violation of § 1962(c), including violations of RCW § 4.24.070 and § 19.86.010.

122.  Defendant Amazon acted knowingly at all times when agreeing to conduct the activities of the Social Casino Enterprise. Amazon agreed to and indeed did participate in the requisite pattern of racketeering activity which constitutes this RICO claim, collected unlawful debts, engaged in racketeering activities, and intentionally acted in furtherance of the conspiracy by conducting the pattern of racketeering and unlawful debt collection as described above.

123.  At the very latest, Amazon had notice of the illegality of the Social Casino Enterprise as of the Ninth Circuit's 2018 holding in *Kater*. Amazon's post-*Kater* participation in the Social

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300  •  Fax: 415 373 9435

Casino Enterprise demonstrates its commitment to upholding and operating the structure of the Social Casino Enterprise.

124.   As a result of Amazon's conduct, Plaintiff and Members of the Class were deprived of money and property that they would not otherwise have lost.

125.   Under 18 U.S.C. § 1964(c), the Class is entitled to treble their damages, plus interest, costs, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

Plaintiff Steven Horn, individually and on behalf of all others similarly situated, respectfully requests that this Court enter an Order:

A.   Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Horn as representative of the Class, and appointing his counsel as Class Counsel;

B.   Declaring that Defendant's conduct, as set out above, is unlawful under the RCW;

C.   Declaring that Defendant's conduct, as set out above, constitutes racketeering activities, collection of unlawful debts, and conspiracy to engage in the same;

D.   Entering judgment against Defendant Amazon, in the amount of the losses suffered by Plaintiff and each member of the Class;

E.   Enjoining Defendant from continuing the challenged conduct;

F.   Awarding damages to Plaintiff and the Class members in an amount to be determined at trial, including trebling as appropriate;

G.   Awarding restitution to Plaintiff and Class members in an amount to be determined at trial;

H.   Requiring disgorgement of all of Amazon's ill-gotten gains;

I.   Awarding reasonable attorneys' fees and expenses;

J.   Awarding pre- and post-judgment interest, to the extent allowable;

K.   Requiring injunctive and/or declaratory relief as necessary to protect the interests of

27

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300 • Fax: 415 373 9435

Plaintiff and the Class; and

L.  Awarding such other and further relief as equity and justice require, including all forms of relief provided for under the RCW.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**STEVEN HORN**, individually and on behalf of all others similarly situated,

By: /s/ Todd Logan
   *One of Plaintiff's Attorneys*

EDELSON PC
Todd Logan, WSBA #60698
tlogan@edelson.com
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

TOUSLEY BRAIN STEPHENS, PLLC
Cecily C. Jordan, WSBA #50061
cjordan@tousley.com
1200 Fifth Avenue, Suite 1700
Seattle Washington 98101-3147
Tel: 206.682.5600
Fax: 206.682.2992

*Counsel for Plaintiff and the Proposed Class*

EDELSON PC
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415 212 9300 • Fax: 415 373 9435