The Honorable Robert S. Lasnik

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STEVEN HORN, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br> v.<br><br>AMAZON.COM, INC.,<br><br>   *Defendant*. | No. 2:23-cv-01727-RSL<br><br>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Noting Date: July 9, 2026 |

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

BACKGROUND ...............................................................................................................3

I.   Plaintiff's Allegations ..............................................................................................3

II.  Relevant Litigation History (2015-Present) .............................................................5

     A.  Amazon's Motion to Stay Pending Ninth Circuit Appeal ..................................5

     B.  Amazon's Motion for Protective Order ............................................................5

     C.  Discovery Requests .........................................................................................6

     D.  Amazon's Motion to Dismiss Under Section 230 ............................................6

     E.  Plaintiff's Motions to Compel .........................................................................6

     F.  Litigation in the Other, Similar Platform Cases ..............................................7

III. The Parties Reach a Mediated Settlement ...............................................................9

THE TERMS OF THE SETTLEMENT AGREEMENT .....................................................9

LEGAL STANDARD.......................................................................................................17

ARGUMENT ...................................................................................................................18

I.   The Proposed Class Should Be Certified. ...............................................................18

     A.  The Proposed Class Meets the Requirements of Rule 23(a).............................19

         1.  The Proposed Settlement Class Is Sufficiently Numerous. ........................19

         2.  Settlement Class Members Share Common Questions of Law and Fact....20

         3.  Plaintiff's Claims Are Typical of Settlement Class Members' Claims. ......21

         4.  The Class Representative and Proposed Class Counsel Adequately Represent the
             Settlement Class. ......................................................................................22

     B.  The Proposed Class Satisfies the Requirements of Rule 23(b)(3). ...................24

         1.  Common Questions of Law and Fact Predominate. ...................................24

         2.  A Class Action Is the Superior Method of Resolving the Controversy. .....25

II.  The Proposed Settlement Merits Preliminary Approval. .........................................26

A.  The Class Representative and Proposed Class Counsel Have Adequately Represented the Settlement Class. ...........................................................................................................26

B.  The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties. ...............................................................................................................................27

C.  The Settlement Treats Class Members Equitably. ...........................................................28

D.  The Relief Secured for the Settlement Class Is Adequate. ..............................................30

    1.  The Cost, Risk, and Delay of Further Litigation, Compared to the Settlement's Benefits, Favor Approval. ....................................................................................30

    2.  The Method of Processing Claims and Distributing Relief to the Settlement Class Members Is Effective. .........................................................................................33

    3.  The Terms of the Requested Attorneys' Fees Are Reasonable. ..................................35

    4.  The Covenant Judgment and Assignment Structure Is Fair and Reasonable. .............37

E.  The Churchill Factors Likewise Support Preliminary Approval. .....................................40

III. The Court Should Approve the Proposed Notice Plan. ..........................................................40

A.  The Notice Plan for the Settlement Class is More than Adequate. ..................................41

B.  The Notice Provided to the Application Developers Is More than Adequate. ..................43

CONCLUSION ...............................................................................................................................44

CERTIFICATION ..........................................................................................................................46

# TABLE OF AUTHORITIES

**U.S. Supreme Court Cases**

*Amchem Prods., Inc. v. Windsor*,
  21 U.S. 591 (1997)...............................................................................................18, 19

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804, 809 (2014)...............................................................................................24

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338, 350 (2011)...............................................................................20, 21, 22

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016).................................................................................................24, 25

**U.S. Court of Appeals Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013) .......................................................................20, 21

*Bateman v. Am. Multi-Cinema, Inc.*,
  623 F.3d 708 (9th Cir. 2010) ............................................................................20

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ........................................................................19

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ...........................................................18, 26, 40

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ........................................................................17

*Custodero v. Apple, Inc.*,
  No. 25-7917, Dkt. #2 (9th Cir. Dec. 16, 2025) .........................................8, 32

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ...........................................................................22

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) .........................................................................20

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...........................................................20, 21, 22, 24

*In re Apple Inc. Device Performance Litig.*,
  50 F.4th 769 (9th Cir. 2022) ...............................................................28, 37

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...............................................................28, 37

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ...............................................................18, 26

*Kater v. Churchill Downs Inc.*,
  886 F.3d 784 (9th Cir. 2018) ............................................................. *passim*

*Miles v. Kirkland's Stores Inc.*,
  89 F.4th 1217 (9th Cir. 2024) ....................................................................24

*Parra v. Bashas', Inc.*,
  536 F.3d 975 (9th Cir. 2008). ....................................................................20

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .....................................................................21

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .....................................................................21

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...................................................................28

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ..............................................................21, 25

**U.S. District Court Cases**

*Adolph v. Reed Hein & Assocs.*,
  No. 2:21-cv-01378-BJR (W.D. Wash. June 5, 2026) ...........................43, 44

*Ali v. Menzies Aviation, Inc.*,
  No. 16-cv-00262-RSL (W.D. Wash. Sept. 6, 2016) ..............................19, 21

*Benson v. Double Down Interactive, LLC*,
  No. 18-cv-525-RSL (W.D. Wash.) ...................................................... *passim*

*Bess v. Ocwen Loan Servicing LLC*,
  334 F.R.D. 432 (W.D. Wash. 2020) ...........................................................25

*Cottle v. Plaid Inc.*,
  340 F.R.D. 356 (N.D. Cal. 2021).....................................................18, 26, 40

*De Coster v. Amazon.com, Inc.*,
 350 F.R.D. 293 (W.D. Wash. 2025) ....................................................................21, 22

*Ferrando v. Zynga Inc.*,
 No. 22-cv-214-RSL (W.D. Wash.) ................................................................... *passim*

*Geier v. m-Qube Inc.*,
 314 F.R.D. 692 (W.D. Wash. 2016) ........................................................................22

*Gragg v. Orange CAB Co., Inc.*,
 No. 12-cv-0576-RSL (W.D. Wash. Mar. 1, 2017) ....................................................28

*Helde v. Knight Transp., Inc.*,
 No. 12-cv-00904-RSL (W.D. Wash. May 24, 2017).................................................27

*Ikuseghan v. Multicare Health Sys.*,
 No. 14-cv-05539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016)...................32

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
 625 F. Supp. 3d 971 (N.D. Cal. 2022) ..............................................................6, 8, 32

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
 806 F. Supp. 3d 1015 (N.D. Cal. 2025) ................................................................8, 32

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
 No. 21-md-2985-EJD (N.D. Cal.)..................................................................8, 9, 23

*In re Facebook Simulated Casino-Style Games Litig.*,
 No. 21-cv-2777-EJD (N.D. Cal. Sept. 23, 2021)....................................................8, 23

*In re Google Play Store Simulated Casino-Style Games Litig.*,
 No. 21-md-3001-EJD, Dkt. #51 (N.D. Cal. Sept. 23, 2021)...................................8, 23

*Jama v. GCA Servs. Grp., Inc.*,
 No. 16-cv-0331-RSL (W.D. Wash. Oct. 20, 2017) .............................................19, 23

*Kelley v. Microsoft Corp.*,
 251 F.R.D. 544 (W.D. Wash. 2008) ........................................................................26

*Larsen v. PTT, LLC*,
 737 F. Supp. 3d 1076 (W.D. Wash. 2024)............................................................4, 23

*Larsen v. PTT, LLC*,
 No. 3:18-CV-05275-TMC, 2024 WL 4481216 (W.D. Wash. Apr. 17, 2024) ............19

*Linehan v. AllianceOne Receivables Mgmt., Inc.*,
No. 15-cv-1012-JCC, 2017 WL 3724819 (W.D. Wash. June 1, 2017) .......................34

*Reichert v. Keefe Commissary Network, LLC*,
331 F.R.D. 541 (W.D. Wash. 2019) ...................................................................24, 25

*Reed v. Light & Wonder, Inc.*,
No. 18-cv-00565-RSL (W.D. Wash.) .................................................................. *passim*

*Rollins v. Dignity Health*,
336 F.R.D. 456 (N.D. Cal. 2020)................................................................................18

*Scott v. United Servs. Auto. Ass'n*,
No. 11-cv-1422-JCC (W.D. Wash. Jan. 7, 2013) .......................................................30

*Taylor v. Universal Auto Grp. I, Inc.*,
No. 13-cv-5245-KLS (W.D. Wash. Nov. 24, 2014).....................................................25

*Williams v. PillPack LLC*,
343 F.R.D. 201 (W.D. Wash. 2022) ..........................................................................24

*Wilson v. Huuuge, Inc.*,
No. 18-cv-5276-RSL (W.D. Wash.) ...............................................................3, 19, 23

*Wilson v. Playtika LTD*,
No. 18-cv-5277-RBL (W.D. Wash.)................................................................3, 15, 19. 23

*Wilson v. PTT, LLC*,
No. 18-cv-5275-TMC (W.D. Wash.)...............................................................3, 19, 23

**State Appellate Cases**

*Bird v. Best Plumbing Grp., LLC*,
175 Wash. 2d 756 (2012)......................................................................................37, 43

*Chaussee v. Maryland Cas. Co.*,
60 Wash. App. 504, 812 P.2d 487 (Wash. Ct. App. 1991).........................................40

*Starr Indem. & Liab. Co. v. PC Collections, LLC*,
25 Wash. App. 2d 382 (2023)...................................................................................43

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 23 ......................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3)..............................................................................21, 26

**Statutes**

H.B. 2720, 66th Leg., Reg. Sess. (Wash. 2020) ............................................................33

RCW 19.86.010 ................................................................................................................4

RCW 4.22.060 ........................................................................................... *passim*

RCW 4.24.070 ..................................................................................................................4

RCW 9.46.0285 ........................................................................................................15, 20

**Secondary Sources**

3 William B. Rubenstein, Newberg and Rubenstein on Class Actions
     8:17 (6th ed. 2026).....................................................................................................42

4 William B. Rubenstein, Newberg and Rubenstein on Class Actions
     13:53 (6th ed. 2026)...................................................................................................34

5 William B. Rubenstein, Newberg and Rubenstein on Class Actions
     15:83 (6th ed. 2026)...................................................................................................36

**Other Authorities**

ADSA (last updated April 1, 2026),
     available at: https://developer.amazon.com/support/legal/da ..............................12, 37

PLS.' UNOPPOSED MOT. FOR PRELIM. APPROVAL
CASE NO. 23-CV-01727

vii

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

**INTRODUCTION**

This Court is no stranger to proposed Class Counsel's more-than-decade-long litigation campaign against the social casino industry. Nor is it a stranger to the results of that campaign, including six prior class action settlements over the past six years with several of the largest social casino application developers in the industry, which have collectively returned more than six hundred and fifty million dollars to consumers in Washington and nationwide.

The Settlement now before the Court reflects the next chapter in that campaign, providing relief for class members through claims asserted not against a developer but instead against a platform (here, Amazon): the company that brokers the allegedly illegal gambling transactions in the apps. Of course, Amazon's role in the alleged illegal gambling operation differs from the developers' roles, and Amazon has potential defenses to these claims that the developers never had—such as the arguments Amazon (like the other platforms facing similar litigation) already raised asserting complete immunity from suit under Section 230 of the Communications Decency Act. And while Plaintiff believes he would ultimately prevail against Amazon's defenses, there is always some risk—and, at minimum, delay—in continued litigation of novel legal issues.

Crucially, Amazon also holds something of significant value to the Settlement Class: contractual rights to be indemnified by the very developers that built, operated, and kept the majority of the profits from the at-issue social casino apps. The Settlement now before the Court leverages those contractual rights, implementing a novel structure that aims to provide Settlement Class Members with the same caliber of relief as achieved in the prior developer settlements. Rather than press through years of litigation on the merits of the underlying claims, this Settlement allows Class Counsel to pursue contract claims against the developers themselves, and it aims to return *the same percentage of the Class's alleged damages* to consumers as in the prior developer settlements—an excellent result given Amazon's unique defenses.

Specifically, the Parties' agreement proposes entry of a $201,355,607.75 Covenant

1

Judgment against Amazon in favor of the Settlement Class, which represents thirty percent (30%) of every dollar Class Members spent in over two hundred social casino apps during the relevant period, paired with an assignment of Amazon's contractual indemnification rights against the thirty-two developers of those apps. Under the proposed Settlement Agreement, Amazon would contribute $2.5 million to cover the up-front costs of Class Notice and other settlement administration, but the Class would agree not to execute the Covenant Judgment amount against Amazon. Instead, Class Counsel proposes to establish a litigation trust, the Edelson PC Amazon Social Casino Litigation Trust (the "Trust"), with the Settlement Class as its sole beneficiary, which would use the assigned rights to step into Amazon's shoes and enforce the developers' contractual obligations to indemnify Amazon for each developer's pro rata share of the Judgment—which has been calculated based on the Class's spending in each of the at-issue apps during the relevant period. Money would then be paid out to Class Members as it is received from developers. Under this framework, the Class stands to recover from the developers themselves a significant percentage of the Class's damages in an amount that falls directly in line with the prior developer settlements.

In addition, the Settlement also secures meaningful prospective relief for Class Members and the public. Across every at-issue app, Amazon will confirm that the game has been changed so that players who run out of chips can keep playing without being forced to pay, and Amazon will pull any app from its store that fails to comply. And every participating developer must give players tools to limit or stop their own spending, including the ability to block their own chip purchases and to suspend or close their accounts, and must use reasonable efforts to honor those choices.

The structure proposed here may be novel, but the results for the Class keep pace with all of the prior social casino class settlements this Court has reviewed and approved. The Settlement Agreement here is the product of a decade-long campaign against social casinos in this District, and against the social casino industry more broadly, and nearly two years of hard-fought, adversarial litigation against Amazon in this specific Action. While Plaintiff believes strongly in

the merits of his claims, and prevailed on key early discovery motions, Amazon litigated zealously from the start and brought a number of unique defenses to this Action. The proposed Settlement converts a difficult and risky litigation into a clear path to financial recovery whereby Settlement Class Members can get back the same portion of spending as in the prior developer settlements—which for Settlement Class Members with the highest spending levels results in life-changing sums.

For the reasons that follow, Plaintiff respectfully requests that the Court: (i) certify the proposed Settlement Class; (ii) grant preliminary approval of the Settlement; (iii) appoint Steven Horn as Class Representative; (iv) appoint Todd Logan, Brandt Silverkorn, Amy B. Hausmann, and Lauren Blazing of Edelson PC as Class Counsel; (v) approve the proposed Notice Plan; and (vi) schedule the final approval hearing. Though Amazon denies all allegations of wrongdoing and any liability for Plaintiff's claims, it does not oppose the specific relief sought herein.

**BACKGROUND**

### I.    Plaintiff's Allegations

On November 10, 2023, Plaintiff Steven Horn filed this proposed class action lawsuit against Amazon.com, Inc., alleging that Amazon violated Washington gambling law and the Consumer Protection Act by brokering illegal gambling transactions on social casino apps available through the Amazon Appstore, including by serving as the exclusive payment processor for in-app purchases of virtual casino chips in those apps. *See* Dkt. #1 ¶¶ 9, 16, 53. This Action involves the same sorts of social casino apps at issue in previous class actions with which this Court is well familiar. *See, e.g.*, *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018); *Benson v. Double Down Interactive, LLC*, No. 18-cv-525-RSL (W.D. Wash.); *Wilson v. Playtika LTD*, No. 18-cv-5277-RBL (W.D. Wash.); *Ferrando v. Zynga Inc.*, No. 22-cv-214-RSL (W.D. Wash.); *Wilson v. Huuuge, Inc.*, No. 18-cv-5276-RSL (W.D. Wash.); *Reed v. Light & Wonder, Inc.*, No. 18-cv-00565-RSL (W.D. Wash.); *Wilson v. PTT, LLC*, No. 18-cv-5275-TMC (W.D. Wash.). While those cases focused on the liability of the developers who created and operated the games, this case alleges that Amazon—the platform that brokered the gambling

transactions and took a thirty percent cut of each one—is also liable under the same statutes.

Social casino apps are designed to replicate the experience of certain traditional casino games—namely, slot machines. Users purchase virtual "chips" in exchange for real money and then gamble those chips in-game in hopes of winning still more chips to keep gambling. Dkt. #1 ¶ 4. But unlike Las Vegas casinos, social casinos do not allow players to cash out their chips. Instead, purchased and won chips alike can be used only for more gameplay. *Id.* The chips are therefore "things of value" under Washington law because they can be purchased for money and used to extend gameplay. *See Kater*, 886 F.3d at 787; *Larsen v. PTT, LLC*, 737 F. Supp. 3d 1076, 1085 (W.D. Wash. 2024). Plaintiff alleged that because these chips have no use other than illegal gambling, it is substantially certain that when a user buys virtual chips, those chips will be used to make an illegal wager. Dkt. #1 ¶ 4.

Plaintiff alleges Amazon's role in this enterprise is that of the casino's bank and broker. The social casino apps are required to use Amazon's payment system to process all in-game purchases, and Amazon collects a 30% commission on every virtual chip transaction before remitting the remainder to the developers. *Id.* ¶¶ 9, 16, 44, 53. Amazon also created its own virtual currency, Amazon Coins, that consumers could purchase and redeem for virtual chips within the social casino apps. *Id.* ¶ 43. Whether a consumer purchased chips with U.S. dollars or redeemed Amazon Coins, the result was the same: once converted to virtual chips, Plaintiff alleges, those chips could not be reconverted to cash or Amazon Coins, and their only use was to wager on gameplay. *Id.* ¶¶ 4, 43.

Plaintiff asserts claims for violations of RCW § 4.24.070 (the "Recovery of Money Lost at Gambling Act" or "RMLGA"), violations of RCW § 19.86.010 *et seq*. (the "Washington Consumer Protection Act" or "CPA"), and unjust enrichment. Amazon denies all allegations, including any liability related to its operation of the Amazon Appstore, Amazon Coins, or any in-app transactions in social casino applications, and claims, among other defenses, immunity under Section 230.

## II.    Relevant Litigation History (2015-Present)

This case is the most recent in a decade-long series of lawsuits against the social casino industry. Because the Court is familiar with this history, *see generally Ferrando*, No. 22-cv-214-RSL, Dkt. #23 at 2-5 (summarizing social casino litigation in this District from 2015-2022 as well as litigation-adjacent advocacy efforts before regulators, the legislature, and the media), Plaintiff will not recount it here and will focus instead on the litigation in this specific Action and the salient developments in the social casino litigation landscape over the past few years.

Plaintiff filed this Action on November 10, 2023, and in the two-and-a-half years since has litigated aggressively against one of the most well-resourced defendants in the country. Amazon, for its part, has defended itself vigorously, contesting liability at each stage.

### A.    Amazon's Motion to Stay Pending Ninth Circuit Appeal

On January 4, 2024, less than two months after this case was filed, Amazon moved to stay all proceedings pending the Ninth Circuit's resolution of a consolidated interlocutory appeal from the parallel California MDL proceedings against Apple, Google, and Meta, which raised the same Section 230 immunity defense Amazon intended to assert here. Dkt. #14. After full briefing, the Court granted the motion on January 26, 2024, staying all deadlines pending resolution of the appeal. Dkt. #30.

On May 21, 2024, the Ninth Circuit dismissed the consolidated appeal for lack of jurisdiction. Dkt. #36. Over Amazon's objection, on October 29, 2024, the Court issued an order lifting the stay, permitting discovery to commence, and allowing Amazon to stage its anticipated motion to dismiss under Section 230. Dkt. #39. Plaintiff served his first set of document requests and interrogatories that same day, and Amazon timely served objections and responses.

### B.    Amazon's Motion for Protective Order

On November 27, 2024, Amazon filed a Motion for Protective Order seeking to limit discovery pending resolution of its anticipated Section 230 motion. Dkt. #42. Amazon proposed limiting discovery to transaction data for only the three social casino applications Plaintiff himself had played, rather than the complete universe of social casino applications on the

Amazon Appstore. Plaintiff opposed the motion, Dkt. #48, and the Court denied it on February 28, 2025, Dkt. #76.

### C.  Discovery Requests

With the stay lifted and Amazon's attempt to limit discovery denied, Plaintiff aggressively pursued discovery. Plaintiff served ten Requests for Production and two Interrogatories targeting the core issues in the case: transaction data for in-app purchases across the Amazon Appstore, documents relating to addiction and the targeting of vulnerable users, communications between Amazon and social casino application developers, internal discussions regarding the legality of social casino transactions on Amazon's platform, and the identification of Amazon employees with relevant knowledge. *See* Declaration of Todd Logan ("Logan Decl.") ¶ 4.

### D.  Amazon's Motion to Dismiss Under Section 230

On December 4, 2024, Amazon filed a Motion to Dismiss for Failure to State a Claim, arguing that it was entitled to full immunity under Section 230 of the Communications Decency Act. Dkt. #44. The Parties briefed the motion in full. In his opposition, Plaintiff argued that Amazon's position was foreclosed by controlling Ninth Circuit authority, and that a court in this Circuit had already rejected identical Section 230 arguments by Amazon's platform peers over nearly identical conduct. *See* Dkt. #64; *see also In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 625 F. Supp. 3d 971 (N.D. Cal. 2022). Amazon vigorously disagreed.

On March 25, 2025, the Parties filed a Stipulated Motion to Hold Decision on Amazon's Motion to Dismiss in Abeyance Pending Mediation. Dkt. #79. The Court granted the stipulation the following day. Dkt. #80. The motion remains pending and unresolved.

### E.  Plaintiff's Motions to Compel

Due to the Parties' disagreement over the permissible scope of discovery, Plaintiff filed three separate motions to compel over approximately five months.

*First*, on January 24, 2025, Plaintiff moved to compel production responsive to Request for Production ("RFP") Nos. 2–3 and Interrogatory Nos. 1–2, which sought documents

concerning Amazon's communications with social casino application developers and the identification of Amazon employees with knowledge of the relevant transactions and business practices. Dkt. #65. After full briefing, the Court granted the motion on March 7, 2025. Dkt. #78. Amazon began producing documents later that month.

*Second*, on April 28, 2025, Plaintiff filed a Motion to Compel Production of Social Casino Transaction Data, requesting production of complete transactional data for all social casino apps on the Amazon Appstore. Dkt. #81. As set forth in Plaintiff's Motion, this data was essential to understanding the full scope of Amazon's involvement in social casino transactions and to calculating potential class-wide damages.

*Third*, on June 9, 2025, Plaintiff filed a Motion to Compel Production responsive to RFP Nos. 4, 5, and 10 and to Complete and Certify Production responsive to RFP Nos. 2–3 and Interrogatory Nos. 1–2. Dkt. #91. RFP No. 4 sought Amazon's communications with social casino developers; RFP No. 5 sought Amazon's internal discussions about continuing to offer social casinos in light of Washington gambling laws and litigation; and RFP No. 10 sought Amazon's communications with Apple, Google, and Facebook regarding social casinos and slot developers. Plaintiff simultaneously sought an order requiring Amazon to complete and certify its production in compliance with the Court's prior order granting Plaintiff's first motion to compel. A corresponding Motion to Seal was filed the same day.

Ultimately, following Plaintiff's discovery efforts and these motions, Amazon's production included documents and information sufficient for proposed Class Counsel to make informed settlement-related decisions regarding the strengths and weaknesses of the Class's claims. *See* Logan Decl. ¶ 5.

### F. Litigation in the Other, Similar Platform Cases

As this Court is aware, Plaintiff's undersigned counsel are also leading similar actions filed in 2021 against the other major platform providers—Apple, Google, and Meta—regarding their role in the social casino industry. Those actions (which assert claims under dozens of different state laws) are proceeding in the Northern District of California before the Hon. Edward

J. Davila. *See In re Apple*, No. 21-md-2985-EJD, Dkt. #68 at 5 (N.D. Cal. Sept. 23, 2021) (appointing Rafey S. Balabanian as Interim Lead Counsel and Todd Logan as Law and Briefing Counsel); *In re Google Play Store Simulated Casino-Style Games Litig.*, No. 21-md-3001-EJD, Dkt. #51 at 5 (N.D. Cal. Sept. 23, 2021) (same); *In re Facebook Simulated Casino-Style Games Litig.*, No. 21-cv-2777-EJD, Dkt. #77 at 5 (N.D. Cal. Sept. 23, 2021) (same). The platform defendants in those cases have filed two rounds of motions to dismiss, raising defenses under Section 230 of the Communications Decency Act as well as under the various state gambling and consumer protection statutes. Plaintiffs in those cases have twice defeated the platforms' Section 230 arguments before the district court. *In re Apple*, 625 F. Supp. 3d at 995; *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 806 F. Supp. 3d 1015, 1034 (N.D. Cal. 2025). However, the Section 230 issue is currently on appeal before the Ninth Circuit for the second time. *See* Order Granting Petition for Permission to Appeal, *Custodero v. Apple, Inc.*, No. 25-7917, Dkt. #2 (9th Cir. Dec. 16, 2025). Much like Amazon's Section 230 defense in this Action, the other platforms argue that Section 230 provides complete immunity from all of plaintiffs' claims regarding the platforms' role in operating social casino applications. *E.g.*, Opening Brief for Apple Inc., *Custodero*, No. 25-7917, Dkt. #11.1 (9th Cir. Apr. 10, 2026).

The ongoing litigation against Apple, Google, and Meta also provides a preview of the types of unique defenses platform providers (like Amazon) are likely to bring in an action like this one. For example, in their second round of motions to dismiss, filed in November 2024, Apple, Google, and Meta argued that plaintiffs could not state a claim against platforms under state gambling and consumer protection laws (including the RMLGA and the CPA) because the platforms were not the winner, dealer, or proprietor of the alleged gambling games, because plaintiffs had not lost anything of value to the platforms, and because plaintiffs lacked statutory standing. *In re Apple*, 806 F. Supp. 3d at 1035-45. The District Court for the Northern District of California granted the motion to dismiss plaintiffs' RMLGA claims against Apple, Google, and Meta, but denied the motion as to the CPA claims. *Id.* at 1041-43 (finding that platform defendants were not "winners" or "proprietors" within the meaning of Washington law, and that

"Plaintiffs have failed to plead recoverable losses under [Washington's and other states'] loss recovery statutes"); *id.* at 1044-45 (denying motions as to consumer protection claims other than those under California law). Plaintiffs in those cases have indicated they intend to seek leave to replead their loss recovery claims, but the cases are currently stayed pending resolution of the interlocutory appeal of the Section 230 issue. *See* Order Staying Case Pending Interlocutory Appeal, *In re Apple*, Dkt. #198, No. 21-md-2985 (June 1, 2026).

### III.    The Parties Reach a Mediated Settlement

On June 13, 2025, the Parties held a full-day, in-person mediation with Niki Mendoza of Phillips ADR. Logan Decl. ¶ 7. Prior to mediation, the Parties submitted briefs regarding the core facts, legal issues, litigation risks, and potential settlement structures. *Id.* The Parties did not reach an agreement at the first mediation session. *Id.*

Following the mediation, on June 20, 2025, the Parties submitted a joint status report requesting a stay of the case. Thereafter, the Parties engaged in extensive continuing settlement negotiations telephonically and via email, during which time they submitted multiple status reports requesting that the Court continue the stay. *Id.* ¶ 8. On September 12, 2025, the Parties held a second mediation session via Zoom videoconference with Ms. Mendoza to further narrow the issues in dispute. *Id.*

Over the following weeks, the Parties continued to negotiate the remaining open terms. On November 18, 2025, the Parties executed the operative term sheet governing this Settlement. *Id.* ¶ 9. The negotiations did not end there: for the next several months, the Parties worked out the details of a final and binding class action settlement agreement, exchanged multiple rounds of a working settlement document and supporting exhibits, met and conferred telephonically to resolve disputed provisions, and vetted and engaged a proposed settlement administrator. *Id.* ¶ 10. On June 10, 2026, the Parties completed execution of the Settlement Agreement now before the Court. *See id.* ¶ 14; Exhibit 1, Class Action Settlement Agreement ("Agreement").

### THE TERMS OF THE SETTLEMENT AGREEMENT

For the Court's convenience, the key terms of the Agreement are summarized below.

**I.  Settlement Class Definition:** The Settlement Class is defined as "all individuals who, in the United States, made one or more in-app purchases between November 10, 2019, and November 10, 2025, in any of the Applications obtained from the Amazon Appstore."[1] Agreement § 1.41. The Applications encompass social casino apps developed and operated by thirty-two (32) of the largest developers in the social casino space, including Product Madness, Scopely, DoubleU Games, SpinX Games, and others (the "Application Developers"). *See id.* § 1.6; Ex. A[2].

**II.  Settlement Structure:** Unlike a traditional cash settlement, this Agreement reflects Amazon's distinct role as the platform through which the Applications were offered, and it leverages Amazon's indemnification rights against the Application Developers to seek significant financial recovery for the Settlement Class Members. The Settlement is structured largely around a $201,355,607.75 Covenant Judgment against Amazon (which is 30% of the Settlement Class Members' total spending in the at-issue Applications during the relevant time period), along with the assignment of Amazon's indemnification rights against the Application Developers in exchange for the Class's agreement not to execute that Covenant Judgment against Amazon. In other words, under the proposed settlement framework, Class Counsel will step into Amazon's shoes to pursue financial recovery from the developers themselves, enforcing the developers' contractual obligation to indemnify Amazon for the portion of the Covenant Judgment attributable to the Class's spending on that developers' Applications.

The Settlement Agreement also contemplates specific incentives for developers to "participate" and pay their pro rata share of the Covenant Judgment, including (i) a discount for quick, voluntary settlement of the indemnification claims, and (ii) an agreement from Amazon

---

[1] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families, (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parent has a controlling interest and their current or former officers, directors, and employees, (3) persons who properly execute and file a timely request for exclusion from the Settlement Class, (4) persons estopped from bringing the Released Claims pursuant to prior class action settlements identified in § 1.38 of the Agreement, and (5) the legal representatives, successors, or assigns of any such excluded persons. Agreement § 1.41.

[2] As cited herein, lettered exhibits refer to the exhibits to the Agreement.

that participating developers may use alternative payment processors (which charge far less than Amazon's 30% fee) for in-app purchases. Alternatively, of course, the Trust will litigate the full value of the Assigned Claims against each developer.

**A. Amazon's Up-Front Payment:** Within fourteen days of Preliminary Approval, Amazon will pay $2,500,000.00 into the Advance Funding Account to cover Settlement Administration Expenses, including the proposed notice program described below. *See id.* § 2.1.

**B. Covenant Judgment:** Within seven days of the Effective Date (following the Final Approval Hearing and the Final Judgment), Amazon will consent to entry of the Covenant Judgment in the aggregate amount of $201,355,607.75, reflecting 30% of the total value of the Settling Transactions.[3] *See id.* §§ 1.15, 2.2(a). The Covenant Judgment includes individualized Pro Rata Sub-Judgments against each Application Developer, allocated based on each developer's proportionate share of the Settling Transactions. *See id.* § 1.15. In exchange for Amazon's consent to entry of the Covenant Judgment and the assignment of claims described in the next section, Plaintiff will execute a Covenant Not to Execute against Amazon, except for the Assigned Claims described below. *See id.* § 2.2(b).

The Covenant Judgment amount was calculated based on transaction-level data produced by Amazon as part of Agreement. *See id.* § 7.6. Specifically, Amazon provided transaction-level data (the "In-App Virtual Chip Purchase Information") for all Settling Transactions—*i.e.*, all in-app purchases made by Settlement Class Members in the Applications during the relevant period that were not released or estopped by prior settlements. *Id.* §§ 1.23, 1.38. Each Application Developer's Pro Rata Sub-Judgment was calculated based on that same data, and the developer's proportionate share of the total Settling Transactions. *See id.* § 1.15.

---

[3] As set forth in the Agreement, the Settling Transactions exclude purchases in the at-issue Applications that were already released or estopped in prior settlements against social casino developers. *See* Agreement § 1.38. In other words, a Settlement Class Member here who was also a class member a prior settlement against a developer will not recover twice for the same purchase of virtual chips, nor will she recover for any claims estopped by factual stipulations reached in the prior settlements. The Settlement does include, however, purchases those prior settlements left untouched, such as purchases in Applications never at issue before, or, where a prior settlement bound only a Washington class, purchases by Settlement Class Members outside that class.

**C. Assignment of Indemnification Claims to the Edelson PC Amazon Social Casino Litigation Trust:** Upon the Effective Date, Amazon will assign to the Edelson PC Amazon Social Casino Litigation Trust (the "Trust") all existing indemnification and contribution claims it holds against the Application Developers that are reasonably related to the Settling Transactions. *See id.* §§ 1.9, 2.2(c). Amazon represents and warrants that it possesses valid indemnification rights against each Application Developer, either as set forth in Section 11 of the Amazon Developer Services Agreement ("ADSA") or in a substantially equivalent form provided to Class Counsel before execution of the Agreement; that no side agreements modify those indemnification rights as they relate to the claims in this Action; and that Amazon has the right to assign these indemnification rights. *See id.* § 2.2(d). Section 11 of the ADSA provides:

> You will indemnify, defend and hold us (including any respective officers, directors, employees, contractors and assigns) harmless from and against any loss, expense, claim, liability, damage, action or cause of action (including reasonable attorneys' fees) that arises from any third-party claim relating to any Content or Device, or any breach of your representations, warranties or obligations set forth in this Agreement . . . .).

ADSA (last updated April 1, 2026), available at: https://developer.amazon.com/support/legal/da.

With this assignment of claims, the Trust will seek to enforce the Application Developers' contractual obligation to indemnify Amazon for each developer's proportionate share of the Covenant Judgment. The enforcement and litigation of these Assigned Claims will be for the benefit of the Settlement Class, which is designated as the sole beneficiary of the Trust. The Trust, established under Delaware law, further designates Cathy Yanni of JAMS (or another competent individual selected by Class Counsel) as its Trustee, and Class Counsel as the Trust's mandatory counsel. *See* Agreement § 1.18.

Amazon has agreed to cooperate with the Trust's pursuit of the Assigned Claims. Amazon will not oppose, obstruct, or impede the Trust's pursuit of claims against any non-participating Application Developer; will respond to reasonable requests for information and documents; and will consider reasonable requests to make relevant witnesses available. *See id.* § 2.2(e).

**D. Application Developer Participation Framework:** The Trust will seek to

enforce, litigate, and monetize the Assigned Claims, and the Agreement also establishes a framework to encourage Application Developers to settle the Assigned Claims quickly and simply. Each Application Developer will have ninety days after Final Approval to execute a Participation Form and Release. *See id.* § 2.3(a). An Application Developer that executes the Participation Form and Release will (i) pay eighty percent (80%) of its Pro Rata Sub-Judgment amount to the Qualified Settlement Fund, and (ii) in exchange, receive a complete release of both the Assigned Claims and the Settlement Class Members' direct claims against that Application Developer. *See id.* The Agreement also lays out a Payment Plan for Participating Application Developers whereby the developer pays (i) twenty percent (20%) of the Pro Rata Sub-Judgment within seven days of execution of the Participation Form and Release, and (ii) each month thereafter, the greater of thirty percent (30%) of gross in-app purchases in its Applications or three and one-third percent (3.33%) of the gross Pro Rata Sub-Judgment, until the full 80% is satisfied. *See id.* § 2.3(b). Breach of the Payment Plan results in immediate assignment to the Trust of all unpaid amounts plus a penalty fee of 50% of the developer's Pro Rata Sub-Judgment amount, ensuring that the Payment Plan option does not compromise the Settlement Class's recovery. *See id.*

In addition to the discount on the Pro Rata Sub-Judgment, Participating Application Developers also gain an important commercial benefit: for a period of three years, Participating Application Developers may link to alternative payment methods within their Applications, bypassing Amazon's standard payment processing and the associated royalties (30% of every in-app purchase). *See id.* § 2.3(c). Non-participating Application Developers, by contrast, receive none of these benefits: the Trust will seek to enforce the developer's obligation to pay 100% of its Pro Rata Sub-Judgment, and the developer will be required to use Amazon's exclusive payment processing system (and pay the 30% fee) at least until the termination of all litigation related to the Assigned Claims.

**III.     Financial Relief for the Class:** The Settlement Class's monetary recovery will come from the Application Developers as the Trust recovers money through pursuit of the Assigned

Claims. Payments made by Participating Application Developers (either lump-sum or through the Payment Plan), as well as any judgments or settlements obtained by the Trust against non-participating developers, will flow into the Qualified Settlement Fund for distribution to Settlement Class Members with Approved Claims. *See id.* §§ 1.34, 2.4. Each Settlement Class Member's payment will be determined as a percentage share of the Net Settlement Fund, calculated according to the Plan of Allocation based on each member's Lifetime Spending Amount. *See id.* § 2.4(b); Ex. F. Those with higher Lifetime Spending Amounts are eligible to recover a greater percentage of their spending, reflecting the fact that those Settlement Class Members would have been most likely to obtain a treble damages award under the CPA had this case gone to trial.

Initial Settlement Payments will be distributed within ninety days of the Effective Date, with rolling distributions thereafter as additional funds come in from Application Developer payments. *See id.* § 2.4(c)-(d). The Settlement Administrator will not be required to distribute payments more frequently than once every ninety days or in amounts less than ten dollars per class member. *See id.* § 2.4(d)-(e). Uncashed checks and unprocessed electronic payments will be redistributed *pro rata* to participating Settlement Class Members in subsequent distributions where practicable, with any ultimate residual going to the Legal Foundation of Washington as a *cy pres* recipient. *See id.* § 2.4(h)-(i). No amount paid by an Application Developer will revert to Amazon or to any Participating Application Developer. *See id.* § 2.4(j).

**IV.  Prospective Relief:** The Settlement requires meaningful changes to the way the Applications operate going forward. Within thirty days of Final Approval, Amazon will confirm that each Application has implemented necessary changes to game mechanics so that players who run out of virtual chips can continue to play at least one game within the Application of substantially similar quality without purchasing additional chips or waiting for free chips. *See id.* § 2.5(a). If the Trust or Class Counsel notifies Amazon that any Application has failed to implement those changes, Amazon will remove the Application from the Appstore within a commercially reasonable timeframe. *See id.* § 2.5(b).

In addition, every Participating Application Developer (and any non-participating developer that later settles with the Trust) must: (1) maintain a voluntary self-exclusion policy and a publicly accessible section encouraging responsible gameplay; (2) publish a method allowing players to restrict or prohibit virtual chip purchases, suspend their accounts, or close their accounts entirely; and (3) use commercially reasonable efforts to implement and enforce those player elections. *See id.* § 2.5(e). These protections mirror the types of responsible-gambling safeguards required in regulated casino environments and represent a significant advancement in social casino self-regulation. *See, e.g.*, *Wilson v. Playtika Ltd.*, No. 3:18-cv-05277-RBL, Dkt. #124 at 3 (preliminarily approving voluntary self-exclusion policy, in-game link, customer-service referrals, and game-mechanic changes); *Benson*, No. 2:18-cv-00525-RSL, Dkt. #511 (preliminarily approving Settlement Agreement providing for voluntary self-exclusion policy and in-app resources).

**V.   Release:** In exchange for the relief described above, Settlement Class Members will release all claims against Amazon (and its related entities) arising out of or relating to the Applications as they are offered in the Amazon Appstore, including the availability of the Applications in the Amazon Appstore, the use of Amazon Coins relating to the Applications, and the transaction or sale of virtual chips in the Applications. *See id.* §§ 1.35, 3.1-3.2. Participating Application Developers receive a separate release through the Participation Form and Release that will release both the Assigned Claims and any direct claims that Settlement Class Members may have against that Application Developer arising out of or relating to the Settling Transactions. *See id.* § 2.3(a); Ex. I. Application Developers that do not execute a valid Participation Form and Release are not Released Parties; the Trust would retain the ability to pursue the Assigned Claims against them, and Settlement Class Members would retain the ability to pursue any direct claims against those Application Developers. *See id.* § 1.36.

Plaintiff and all Settlement Class Members further stipulate that, with the prospective changes described above, virtual chips in the Applications are gameplay enhancements and not "things of value" under RCW § 9.46.0285, and that Washington law governs any claims relating

to such virtual chips. *See* Agreement § 3.3. This stipulation applies only with respect to Applications offered on the Amazon Appstore by Participating Application Developers and those developers that later resolve their claims with the Trust, and only so long as the prospective changes remain implemented. *See id.* § 3.4.

**VI. Class Notice and Notice to Application Developers:** The Settlement provides for a comprehensive, multi-part notice plan administered by JND Legal Administration, a well-respected class action settlement administrator appointed in multiple prior social casino settlements before this Court. *See* Agreement § 1.40; *see also, e.g.*, *Benson*, No. 18-cv-525-RSL, Dkt. #511 (appointing JND); *Ferrando*, No. 22-cv-214-RSL, Dkt. #26 (W.D. Wash. June 28, 2022) (same).

Amazon will provide the Settlement Administrator and Class Counsel with all Settlement Class Member contact information in its possession, including names, email addresses, default billing addresses, and information sufficient to calculate each member's Lifetime Spending Amount. *See* Agreement § 4.1(a). The Settlement Administrator will use this information to construct the Class List, matching all associated accounts to each unique individual. *See id.* § 4.1(b).

The notice program includes: (a) direct email notice to all Settlement Class Members with valid email addresses, with a link to the Claim Form; (b) First Class U.S. Mail to all members with a Lifetime Spending Amount greater than $100 for whom a mailing address is available; (c) reminder emails at thirty days and seven days before the Claims Deadline; (d) a Settlement Website, launched within seven days of Preliminary Approval, that provides Settlement Class Members with the ability to file claims online and provides information about the Settlement Fund's total value; and (e) a digital publication notice campaign delivering more than ten million impressions, targeted to the extent reasonably possible to the United States, running for at least one month, and containing active hyperlinks to the Settlement Website. *See id.* § 4.2(a)-(e). CAFA notice will be served within ten days of the Agreement's filing. *See id.* § 4.2(f).

In addition to notice to the Settlement Class pursuant to Fed. R. Civ. P. 23, the Agreement provides for notice to the Application Developers pursuant to RCW § 4.22.060 regarding the settlement and the Covenant Judgment. Specifically, no later than the Notice Date, Class Counsel will provide written notice to each Application Developer of the Settlement, including Plaintiff's request for entry of the Covenant Judgment and each developer's Pro Rata Sub-Judgment as part of the Final Approval Hearing. *See id.* § 4.4. Amazon also has the option to send an initial, non-court-ordered notice to each Application Developer informing them of the opportunity to complete a Participation Form and Release. *See id.* § 4.3.

**VII.    Incentive Award Request:** Class Counsel intend to petition the Court for an incentive award to the Class Representative of no more than $10,000, to be paid from the Settlement Funds. *See id.* § 8.2. Amazon reserves its right to challenge any incentive award petition. *See id.*

**VIII.    Attorneys' Fees and Expenses Request:** The Parties have agreed that Class Counsel are entitled to an award of reasonable attorneys' fees and costs, to be determined by the Court and paid from the Qualified Settlement Fund. *See id.* § 8.1. Without the Parties having discussed the issue of attorneys' fees at any point in their negotiations, and with no consideration given or received, Class Counsel have unilaterally agreed to limit any fee petition to no more than thirty percent (30%) of the Qualified Settlement Fund, plus reimbursement of expenses. *See id.* There is no "clear sailing" provision: Amazon may challenge the amount requested. *See id.* Class Counsel's fee—to be determined by the Court once, at Final Approval—will be paid on a rolling basis, collecting the awarded percentage of each payment only as those payments are received from Participating Application Developers through settlement of or judgment on the Assigned Claims. *See id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) governs the settlement of class actions and reflects the Ninth Circuit's "strong judicial policy" favoring the resolution of class claims. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Approval proceeds in two steps. First, the parties must show "that the court will likely be able to . . . approve the proposal under

Rule 23(e)(2)," that is, that the settlement "is fair, reasonable, and adequate" under the Rule 23(e)(2) factors and falls "within the range of possible approval." *Rollins v. Dignity Health*, 336 F.R.D. 456, 461 (N.D. Cal. 2020) (internal citations omitted). If so, the Court directs notice and later holds a hearing for final approval. *Id.* In assessing fairness, courts consider both the factors in *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) and the Rule 23(e)(2) factors. *See Cottle v. Plaid Inc.*, 340 F.R.D. 356, 372 (N.D. Cal. 2021). The *Churchill* factors include the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class certification through trial; the amount offered in settlement; the extent of discovery completed; the experience and views of counsel; the presence of a governmental participant; and the reaction of class members. *Id.* Rule 23(e)(2) directs the Court to consider whether the class representative and class counsel adequately represented the class, whether the proposal was negotiated at arm's length, whether the relief is adequate, and whether the proposal treats class members equitably. Fed. R. Civ. P. 23(e)(2).

**ARGUMENT**

### I.    The Proposed Class Should Be Certified.

Before directing notice, the Court must determine that it "will likely be able to" certify the proposed Settlement Class "for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). To do so, the proposed class must meet the requirements of Rule 23(a) and at least one subsection of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997); *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). Rule 23(a) requires Plaintiff to show that (1) the class is so numerous that joinder of all individual class members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) Plaintiff's claims are typical of those of the class (typicality); and (4) Plaintiff will adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4). Where, as here, certification is sought under Rule 23(b)(3), Plaintiff must also show that common questions predominate over individual ones and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P.

23(b)(3). Because this Class is being certified for settlement purposes, the Court "need not inquire whether the case, if tried, would present intractable management problems." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (quoting *Amchem*, 521 U.S. at 620).[4]

### A. The Proposed Class Meets the Requirements of Rule 23(a).

The proposed Settlement Class has all the same features as the settlement classes that this Court (and others in this District) have repeatedly certified in substantially similar social casino class action settlements, and the one that this Court certified in the *High 5* litigation. *See Wilson v. PTT, LLC*, No. C18-5275RSL, 2021 WL 211532, at *9 (W.D. Wash. Jan. 21, 2021); *Kater v. Churchill Downs Inc.*, No. 15-cv-00612-RSL, 2021 WL 511203, at *1 (W.D. Wash. Feb. 11, 2021); *Wilson v. Huuuge, Inc.*, No. 18-cv-5276-RSL, Dkt. #140 at 2 (W.D. Wash. Feb. 11, 2021); *Wilson v. Playtika Ltd.*, No. 18-cv-5277-RSL, Dkt. #164 at 1 (W.D. Wash. Feb. 11, 2021); *Reed*, No. 18-cv-00565-RSL, Dkt. #166 (W.D. Wash. Jan. 19, 2022); *Ferrando*, No. 22-cv-00214-RSL, Dkt. #26. All four Rule 23(a) requirements are satisfied here.

### 1. The Proposed Settlement Class Is Sufficiently Numerous.

The first prerequisite to certification, numerosity, requires that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no specific minimum number, but generally a class of forty or more members is sufficient. *Ali v. Menzies Aviation, Inc.*, No. 16-cv-00262-RSL, 2016 WL 4611542, at *1 (W.D. Wash. Sept. 6, 2016); *see also Jama v. GCA Servs. Grp., Inc.*, No. 16-cv-0331-RSL, 2017 WL 4758722, at *3 (W.D. Wash. Oct. 20, 2017) (numerosity satisfied by class of ninety-three members).

Here, the Settlement Class easily clears that threshold. Based on Amazon's own

---

[4] Courts in this Circuit sometimes also consider whether a proposed class is "ascertainable," but there is no separate "administrative feasibility" or "ascertainability" requirement implicit in Rule 23. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017); *Larsen v. PTT, LLC*, No. 3:18-CV-05275-TMC, 2024 WL 4481216, at *2 (W.D. Wash. Apr. 17, 2024) (approving certification of class of social casino app users). In any event, Settlement Class membership here turns on objective, ascertainable criteria identifiable from Amazon's own transaction records: whether a person purchased virtual chips or tokens (whether with cash or Amazon Coins) for use in one of the at-issue Applications through the Amazon Appstore in the United States during the Class Period.

transaction data, the Settlement Class consists of hundreds of thousands of U.S. residents who purchased virtual chips or tokens, including with Amazon Coins, for use in the at-issue Applications through the Amazon Appstore during the Class Period. Logan Decl. ¶ 15. Joinder of that many individuals would be impracticable, and the numerosity requirement is satisfied.

**2. Settlement Class Members Share Common Questions of Law and Fact.**

The second Rule 23(a) requirement, commonality, is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is construed permissively and is demonstrated when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."), *overruled on other grounds by Wal-Mart*, 564 U.S. at 338. The common contention must be capable of class-wide resolution, such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). Class members need not "share every fact in common." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012).

This case presents common questions in spades. Are the virtual chips and tokens sold in the at-issue Applications "things of value" under RCW § 9.46.0285? If so, are the Applications "gambling" under Washington law? Does Amazon's role as the exclusive broker for in-app chip purchases—including those funded with Amazon Coins—give rise to liability under the RMLGA and the CPA? Does Section 230 of the Communications Decency Act bar Amazon's liability for that conduct? Are Class Members entitled to recover their losses, treble damages, or injunctive relief? Each of these questions turns on Amazon's common course of conduct, and each will "generate common answers apt to drive the resolution of the litigation." *Abdullah v.*

EDELSON PC
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

*U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013). At the heart of this case is Plaintiff's allegation that Amazon's brokering of chip transactions in the at-issue Applications violates Washington gambling law. Resolution of that allegation would resolve every Class Member's claim "in one stroke." *Wal-Mart*, 564 U.S. at 350. Commonality is therefore satisfied.

### 3. Plaintiff's Claims Are Typical of Settlement Class Members' Claims.

Rule 23(a)'s next requirement, typicality, asks whether the class representative's claims are typical of those of the putative class. Fed. R. Civ. P. 23(a)(3). The purpose of the requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." *Id.*; *see also Ali*, 2016 WL 4611542, at *2 (same). The standard is permissive; representative claims are typical "if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *De Coster v. Amazon.com, Inc.*, 350 F.R.D. 293, 323 (W.D. Wash. 2025) (*quoting Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)); *see also Hanlon*, 150 F.3d at 1020.

Typicality is met here. Plaintiff Horn purchased virtual chips through the Amazon Appstore in social casino Applications, and each of the Applications shares the same basic gameplay features that render them illegal games of chance. *See* Pl.'s Mot. to Compel Production of Social Casino Transaction Data, Dkt. #81 at 9 (arguing that the social casino Applications on Amazon's platform share the same core gameplay features); *see also* Order, Dkt. #76 at 4 (denying Amazon's proposed protective order that would have limited discovery to "the three social casino apps plaintiff allegedly played"); Dkt. #1 ¶¶ 2, 40-42. Plaintiff Horn advances the same legal claims under the RMLGA and the CPA against Amazon as possessed by all members of the proposed Class, alleging that each of the Applications constitutes illegal online gambling and that Class Members' in-game losses therefore must be returned to them. That Horn played only a subset of the at-issue Applications does not render his claims atypical: his claims are

"reasonably coextensive" with those of absent Class Members and need not be "substantially identical." *De Coster*, 350 F.R.D. at 323. Nor do differences in individual spending amounts defeat typicality, as "the specter of individualized damage calculations is not a sufficient reason to find a class representative atypical." *Geier v. m-Qube Inc.*, 314 F.R.D. 692, 698 (W.D. Wash. 2016). Each Class Member, like Horn, was injured by a common course of conduct: Amazon's alleged brokering the sale of virtual chips for use in social casino Applications hosted on the Amazon Appstore. Each, like Horn, has the same interest in obtaining all available relief for those alleged violations. The typicality requirement is satisfied.

### 4. The Class Representative and Proposed Class Counsel Adequately Represent the Settlement Class.

Rule 23(a)'s final requirement, adequacy, asks whether the class representative and counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court considers "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. Where a plaintiff's claims are typical of those of the class, that finding ordinarily supports adequacy as well. *See Wal-Mart*, 564 U.S. at 349 n.5.

Plaintiff meets these requirements. He shares the same interest as every other Class Member in securing relief for Amazon's alleged violations, and the record discloses no conflict of interest. Plaintiff has actively prosecuted this case for nearly two years, including by producing documents and discovery responses, remaining in communication with proposed Class Counsel regarding litigation and settlement, and reviewing and approving the Settlement terms. *See* Logan Decl. ¶ 16. He will continue to fairly and adequately protect the Class's interests.

Proposed Class Counsel are likewise plainly adequate. The relevant inquiry is whether counsel are unencumbered by "conflicts of interest" and will "prosecute the action vigorously." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). Both standards are easily

met. The record discloses no conflicts: proposed Class Counsel's interests are fully aligned with the Class, and they have no relationship to Amazon or to any subset of Class Members that would cause them to favor some Members over others. *See* Logan Decl. ¶ 17. As for vigor, Edelson PC developed the underlying legal theory of the social casino cases, was appointed Class Counsel in *High 5* where they achieved summary judgment against the Defendant and together with their co-counsel won a class-wide damages trial, and was appointed Settlement Class Counsel in six social casino settlements approved by this Court. *See Wilson v. PTT, LLC*, No. C18-5275RSL, 2021 WL 211532, at *9 (W.D. Wash. Jan. 21, 2021) (appointing Edelson PC as Class Counsel); *Larsen*, 737 F. Supp. 3d at 1084–90 (granting summary judgment in favor of the Class); *Kater v. Churchill Downs Inc.*, No. 15-cv-00612-RSL, Dkt. #289 (W.D. Wash. Feb. 11, 2021) (appointing Edelson PC as Settlement Class Counsel); *Wilson v. Huuuge, Inc.*, No. 18-cv-05276-RSL, Dkt. #140 (same); *Wilson v. Playtika Ltd.*, No. 18-cv-05277-RSL, 2021 WL 512230, at *1 (W.D. Wash. Feb. 11, 2021) (same); *Reed*, No. 18-cv-00565-RSL, Dkt. #197 (W.D. Wash. Aug. 12, 2022) (same); *Ferrando.*, No. 22-cv-00214-RSL, Dkt. #63 (W.D. Wash. Dec. 1, 2022) (same); *Benson*, No. 18-cv-00525-RSL, 2023 WL 3761929 (W.D. Wash. June 1, 2023) (same). Class Counsel are also leading analogous multidistrict litigation against Apple, Google, and Facebook in the Northern District of California, where Edelson PC attorneys are serving as Interim Lead Counsel (Rafey S. Balabanian) and Law and Briefing Counsel (Todd Logan). *See In re Apple*, No. 21-md-2985-EJD, Dkt. #68; *In re Google Play*, No. 21-md-3001-EJD, Dkt. #51; *In re Facebook*, No. 21-cv-2777-EJD, Dkt. #77.

There can be no serious question that Class Counsel are well-qualified and experienced members of the plaintiffs' bar, have the resources necessary to conduct litigation of this nature, and are experts in social casino litigation. Consistent with their track record, counsel from Edelson PC litigated this case aggressively against a determined adversary: defeating Amazon's motion for protective order, prevailing on a key motion to compel, and continuing to pressure Amazon against the backdrop of a pending Section 230 motion. Rule 23(a)'s adequacy requirement is more than satisfied. *See Jama*, 2017 WL 4758722, at *6 (finding adequacy where

named plaintiffs and counsel "demonstrated a commitment to vigorously prosecuting this action on behalf of the class").

### B. The Proposed Class Satisfies the Requirements of Rule 23(b)(3).

In addition to meeting all four prerequisites of Rule 23(a), a proposed class must also satisfy Rule 23(b)(3)'s additional requirements: predominance and superiority. Fed. R. Civ. P. 23(b)(3). Certification is encouraged where, as here, "the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. Both requirements are satisfied here.

### 1. Common Questions of Law and Fact Predominate.

Courts "analyze[] the commonality requirement of Rule 23(a)(2) and predominance requirement of Rule 23(b)(3) together given the significant overlap between the two." *Williams v. PillPack LLC*, 343 F.R.D. 201, 207 (W.D. Wash. 2022). Here, common questions predominate. Predominance is a qualitative inquiry: it "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). The Court begins with "the elements of the underlying cause of action." *Reichert v. Keefe Commissary Network, LLC*, 331 F.R.D. 541, 553 (W.D. Wash. 2019) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2014)). In performing that analysis, "the court must focus on 'important questions apt to drive the resolution of the litigation.'" *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024). Individual questions need not be absent; they need only occupy less importance to the litigation than common questions.

The inquiry is straightforward here. Plaintiff's claims under the RMLGA and the CPA depend on evidence and legal argument common to the Settlement Class: principally, Amazon's role in brokering the sale of virtual chips for use in the at-issue Applications. Resolution of class-wide questions—*e.g.*, whether the chips and tokens sold in the Applications are "things of value," whether the Applications constitute illegal gambling under Washington law, whether Amazon's role as social casino broker subjects it to liability under the RMLGA and the CPA,

and whether Section 230 of the Communications Decency Act bars that liability—will resolve questions central to every Class Member's claim in one fell swoop. *See Reichert*, 331 F.R.D. at 552 ("Common questions are defined by the plaintiffs' ability to make a prima facie showing using the same evidence."). An assessment of each Class Member's Lifetime Spending Amount can be accomplished by a common, mechanical method using Amazon's transaction data to calculate the sum of each Class Member's spending on virtual chips. *See Bess v. Ocwen Loan Servicing LLC*, 334 F.R.D. 432, 436 (W.D. Wash. 2020) ("[T]he need for individualized findings as to the amount of damages does not defeat class certification."). And the existence of "affirmative defenses peculiar to some individual class members" does not defeat predominance, even if those defenses must be tried separately. *Tyson Foods*, 577 U.S. at 453. Predominance is satisfied.

### 2. A Class Action Is the Superior Method of Resolving the Controversy.

The superiority criterion considers four factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Each weighs in favor of certification here.

The first two factors plainly favor certification. There is no indication that any Class Members have an interest in pursuing their own claims; given the relative size of individual recoveries and Amazon's demonstrated willingness to litigate aggressively, individual prosecution would be uneconomical. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Nor is there evidence that Class Members have already initiated their own individual actions. And requiring thousands of Class Members to litigate the same claims separately would be enormously inefficient. *See Taylor v. Universal Auto Grp. I, Inc.*, No. 13-cv-5245-KLS, 2014 WL 6654270, at *19 (W.D. Wash. Nov. 24, 2014).

The third factor likewise favors certification. The claims arise under Washington law on behalf of a Class of U.S. residents who purchased chips through the Amazon Appstore, and this Court is intimately familiar with the legal and factual issues underlying social casino litigation, having presided over multiple substantially similar settlements. *See Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 560 (W.D. Wash. 2008) (finding the forum superior because "the Court is already familiar with [p]laintiffs' claims"). Finally, because the proposed Class is being certified for settlement purposes, the Court "need not inquire whether the case, if tried, would present intractable management problems." *In re Hyundai.*, 926 F.3d at 557. All four superiority factors are satisfied. The proposed Settlement Class should be certified.

## II. The Proposed Settlement Merits Preliminary Approval.

Because the Court will likely be able to certify the Settlement Class, it must next determine whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)," Fed. R. Civ. P. 23(e)(1)(B)—that is, whether the Settlement is "fair, reasonable, and adequate," considering whether the class representative and class counsel adequately represented the class, whether the proposal was negotiated at arm's length, whether the relief provided for the class is adequate (taking into account the costs, risks, and delay of trial and appeal and the effectiveness of the proposed method of distributing relief, the terms of any proposed award of attorneys' fees, and any other agreements), and whether the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). In doing so, the Court also considers the *Churchill* fairness factors. *Cottle*, 340 F.R.D. at 373 (listing considerations outlined in *Churchill*, 361 F.3d at 575).

These factors all favor preliminary approval of the proposed Settlement here, which aims to provide Class Members with the same caliber of monetary and prospective relief as the groundbreaking developer settlements previously approved by this Court.

### A. The Class Representative and Proposed Class Counsel Have Adequately Represented the Settlement Class.

As discussed above, *see supra* Section I.A.4, Plaintiff Horn shares the same interests as every other Class Member, has no conflict of interest, and has actively prosecuted this case for

nearly two years. Proposed Class Counsel developed the underlying legal theory of the social casino cases, have been appointed Class Counsel in social casino litigation in this District and six other social casino settlements approved by this Court (and in numerous litigations across the country), and have litigated this case aggressively against a determined, well-funded adversary. In Class Counsel's professional judgment, the Settlement is fair, reasonable, and adequate, and in the best interests of the Class. *See* Logan Decl. ¶ 18. The first Rule 23(e)(2) factor is satisfied.

**B. The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties.**

The Settlement also satisfies Rule 23(e)(2)(B). It is the product of nearly two years of adversarial litigation—not to mention counsel's decade-long litigation campaign against the social casino industry—and informed by arm's-length negotiations facilitated by Phillips ADR, a nationally renowned mediation firm. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The litigation history confirms the absence of collusion. The Parties actively litigated for nearly two years before beginning substantive settlement discussions in June 2025, when they held a full-day, in-person mediation with Niki Mendoza of Phillips ADR. Logan Decl. ¶ 7. The Parties did not reach agreement at that first session, but rather then engaged in months of additional negotiations by phone and email, followed by a second mediation session via Zoom on September 12, 2025, before reaching a term sheet. *See id.* ¶ 8. Finalizing the terms of the full Settlement Agreement, including the amount and terms of the Covenant Judgment, took the Parties many months and involved the exchange and review of voluminous transaction data showing six years of in-app purchases in hundreds of Applications in order to calculate the Covenant Judgment amount. *Id.* ¶¶ 10, 11. That kind of protracted, hard-fought process is the hallmark of a genuinely arm's-length resolution. *See, e.g.*, *Helde v. Knight Transp., Inc.*, No. 12-cv-00904-RSL, Dkt. #191 at 2 (W.D. Wash. May 24, 2017) (granting preliminary approval where "Settlement Agreement resulted from extensive arm's-length negotiations, with

participation of an experienced mediator"); *Gragg v. Orange CAB Co., Inc.*, No. 12-cv-0576-RSL, 2017 WL 785170, at *1 (W.D. Wash. Mar. 1, 2017) (same).

The Settlement also presents none of the "subtle signs" of collusion identified by the Ninth Circuit: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

*First*, proposed Class Counsel are not receiving a disproportionate distribution. Counsel have unilaterally limited any fee petition to no more than 30% of the Settlement Fund, plus expenses, which falls within the "usual range" for fees in this Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); Agreement § 8.1. And far from receiving coupons or *cy pres*-only relief, Class Members are anticipated to receive substantial individual cash recoveries, distributed *pro rata* based on their actual spending. *See* Agreement § 2.4; Ex. F. *Second*, there is no "clear sailing" provision: Amazon expressly retains the right to challenge any fee request it considers unreasonable. *See* Agreement § 8.1. *Third*, no funds will revert to developers, nor will any funds recovered from developers revert to Amazon. *See id.* § 2.4(j). Unawarded amounts remain in the Qualified Settlement Fund for distribution to the Class. *Id.*

The Settlement is the product of serious, informed, hard-fought, non-collusive negotiations, and satisfies Rule 23(e)(2)(B).

### C. The Settlement Treats Class Members Equitably.

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). It does. Settlement Funds recovered from Application Developers through pursuit or settlement of the Assigned Claims will be deposited in a Qualified Settlement Fund, from which each Class Member who submits a valid Claim Form will receive payment. The Plan of Allocation establishes a uniform, objective, and equitable system for determining each Class Member's payment. *See* Agreement § 2.4; Ex.

F. Every Class Member who submits a valid Claim Form is paid *pro rata* from the Qualified Settlement Fund based on his or her individual Lifetime Spending Amount (the dollar value of that person's purchases of virtual chips and tokens (whether with cash or Amazon Coins) in the at-issue Applications in the Amazon Appstore during the Class Period, calculated from Amazon's own transaction data). *See* Agreement §§ 1.24, 4.1. Class Members who spent more recover more, in absolute terms and as a proportion of their losses, which reflects that those Class Members had this case gone to trial would have been most likely to obtain a treble damages award under the CPA.

One feature of this structure warrants further explanation. The Qualified Settlement Fund is a single pool of Settlement Funds: every Class Member shares in it *pro rata* based on their own actual losses, regardless of which particular Application they played, and proceeds from one Application Developer's payment do not flow only to Class Members who played that Developer's Applications. That system is equitable, though some Class Members played Applications whose Developers will pay into the Fund while others played Applications whose Developers will not, as all Class Members have claims against Amazon and have a right to recover from the Funds collected in connection with the Covenant Judgment. For one thing, the Settlement Class's claims arise from a common course of conduct by Amazon: brokering, processing, and profiting from chip transactions across the at-issue Applications. *See supra* Section I.A.2. Every Class Member was injured by the same Defendant doing the same thing, and the *pro rata* allocation by Lifetime Spending Amount ensures that recovery within the Class scales with each member's actual losses. Moreover, the alternative method of distributing funds—segregating recoveries by Application—would lead to uneven recoveries based simply on the order in which the Trust pursues the Assigned Claims and could penalize Class Members who happened to play Applications whose Developers refuse to participate in the Settlement, even though those Class Members were injured by the same Amazon conduct as everyone else. Under the proposed method of disbursement, every Class Member benefits from the Trust's collective enforcement effort, regardless of which Applications they played, ensuring that all

Class Members and the Trust remain aligned.

Other features of the distribution further support equitable treatment. The Settlement is non-reversionary: no Settlement Funds recovered from Application Developers revert to Amazon or to the Developers. *See* Agreement § 2.4(j). Uncashed checks and unprocessed electronic payments are redistributed pro rata to participating Class Members in subsequent distributions before any residual *cy pres* payment to the Legal Foundation of Washington. *See id.* § 2.4(h)-(i). The prospective relief, including the game-mechanic changes and the alternative payment-method provisions, benefits every Class Member identically, including those who do not submit claims. *See id.* § 2.5. And the proposed incentive award for Plaintiff is capped at $10,000, a modest amount relative to the total value of the Settlement and consistent with the amounts courts in this District routinely approve. *See Scott v. United Servs. Auto. Ass'n*, No. 11-cv-1422-JCC, 2013 WL 12251170, at *1 (W.D. Wash. Jan. 7, 2013) (preliminary approval generally granted absent "obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class"). Rule 23(e)(2)(D) is satisfied.

### D.  The Relief Secured for the Settlement Class Is Adequate.

Federal Rule of Civil Procedure 23(e)(2)(C) directs the Court to evaluate whether the relief provided to the Settlement Class is adequate, taking into account "the costs, risks, and delay of trial and appeal" and "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," the proposed attorneys' fee award, and any agreements made in connection with the proposed settlement. The relief here clears that bar.

#### 1.  The Cost, Risk, and Delay of Further Litigation, Compared to the Settlement's Benefits, Favor Approval.

The relief offered by this Settlement is strong and is anticipated to fall right in line with the recoveries achieved in the developer settlements. For example, the historic nationwide settlement achieved in *Kater v. Churchill Downs* established a $155 million settlement fund, which represented approximately 14.35% of that settlement class's spending within the at-issue

social casino applications during the statutory period. *See Kater*, No. 15-cv-00612-RSL, Dkt. #280; *id.*, Dkt. #218-1 § 1.18. The $415 million settlement fund established in *Benson v. DoubleDown* represented approximately 19.5% of that settlement class's relevant spending. *See Benson*, No. 18-cv-00525-RSL, Dkt. #507 at 26. Here, the $201,355,607.75 Covenant Judgment represents 30% of the Settlement Class's spending within the Applications during the relevant period. Thus, even accounting for potential discounted settlement of the Assigned Claims (and, of course, some amount of risk in litigating those claims), the Class is poised to recover a significant portion of their total losses that keeps pace with the settlements achieved against the social casino developers. For instance, if a Participating Application Developer opts to pay 80% of their Pro Rata Sub-Judgment, the recovery for the Class will be 24% (*i.e.*, 80% * 30%) of the spending in that Application—a higher percentage than in either *Kater* or *Benson*. This kind of financial recovery is excellent in comparison to other cases of this magnitude, and it puts this Settlement Agreement squarely in line with the other social casino class action settlements approved by this Court. *E.g.*, *Benson*, 2023 WL 3761929, at *2 (finding that the settlement for 19.5% of spending reflected "the exceptional result in this extraordinarily risky, novel, and hard-fought litigation" and that "[c]lass [m]embers stand to recover substantial portions of their Lifetime Spending Amount"). The adequacy of this relief is particularly remarkable in light of the costs, risks, and delays inherent in further litigation against a platform of Amazon's size and resources. While Plaintiff is confident in the strength of his claims, litigating this case to verdict would impose upon Settlement Class Members substantial risks compared to the clear path to financial recovery this Settlement makes available.

For example, Amazon's pending motion to dismiss under Section 230 of the Communications Decency Act creates risk that Plaintiff's claims could be barred in their entirety, and at the very least is likely to inject serious delay into further litigation. *See* Dkt. #44. Amazon's motion has been held in abeyance pending mediation, *see* Dkts. #79–#80, but it remains live, and an adverse ruling could eliminate the Settlement Class's claims altogether. The risk is not academic. In the parallel multidistrict litigation against Apple, Google, and Meta, the

**EDELSON PC**
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

Northern District of California certified the Section 230 immunity question for interlocutory appeal—only for the Ninth Circuit to avoid that question and remand on jurisdictional grounds. *See In re Apple*, 625 F. Supp. 3d at 991–95. Now, the latest district court order in that MDL is again on appeal, again regarding Section 230 immunity: the platforms filed their briefs in support of appeal on April 10, 2026, and have raised arguments substantially similar to those they pressed before. *See, e.g.*, *Custodero*, No. 25-7917, Dkt. #11. Any substantive disposition of those issues by the Ninth Circuit could bind this Court and erase the Class's claims with the stroke of a pen. Settlement now eliminates that exposure for the Class.

Even if Plaintiff prevailed on the Section 230 motion, the road ahead would be long and contested. Amazon would likely raise additional defenses to the pleadings, oppose class certification, move for summary judgment, take the case through trial, and pursue every available appellate avenue. Amazon has the resources and the demonstrated inclination to contest liability vigorously, as the procedural history of this case already reflects. *See* Dkts. #65, #81, #91. If the parallel litigation against Apple, Google, and Meta in the Northern District of California is any guide, Amazon is likely to raise numerous defenses to Plaintiff's claims—including several that are unique to litigation against platform providers and were not previously addressed in the cases against developers. Those defenses have succeeded in the litigation against Apple, Google, and Meta, and so present very serious risk here. *See In re Apple*, 806 F. Supp. 3d at 1041 (granting Apple's, Google's, and Meta's motions to dismiss similar claims under various states' loss recovery statutes, including the RMLGA). And even if Plaintiff here defeated similar defenses from Amazon, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez*, 563 F.3d at 966; *see also Ikuseghan v. Multicare Health Sys.*, No. 14-cv-05539-BHS, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016) ("[T]he outcome of trial and any appeals are inherently uncertain and involve significant delay. The [s]ettlement avoids these challenges.").

Layered on top of these litigation risks are ongoing regulatory and legislative ones. The International Social Gaming Association ("ISGA") and its members—many of them billion-

dollar gambling corporations—have lobbied the Washington State Legislature for years to amend the State's gambling laws in ways that would gut precisely these claims. Proposed Class Counsel have thus far fended off those efforts, but the ISGA could always resurface. *See* Logan Decl. ¶ 19. If this case does not settle now, industry groups could revive legislation dedicated to "remov[ing] . . . economic uncertainty" by "clarifying" that proposed Class Members cannot recover under the Recovery of Money Lost at Gambling Act. *See, e.g.*, H.B. 2720, 66th Leg., Reg. Sess. (Wash. 2020).

Against those risks, the relief secured here is incredibly strong. The agreed Covenant Judgment is substantial, and Class Members have a clear path to recover that money from the Application Developers based on the Assigned Claims. The Settlement Agreement also creates concrete incentives (a 20% discount for early participation, along with the ability to use alternative payment processing systems) calibrated to maximize developer participation and class recovery. *See* Agreement §§ 2.2, 2.3. As discussed further below, litigation of the Assigned Claims will of course carry its own risks. However, the indemnification provision in the ADSA is straightforward, and enforcement of that contractual term against the Application Developers will be far less risky, expensive, and time-consuming than litigating this nationwide class action against Amazon would be.

Settlement now, on these terms, secures for the Class a clear path to recovering a meaningful portion of damages, removes the numerous litigation risks of this Action against Amazon, neutralizes the legislative risk (since Amazon's contractual indemnification rights would not be affected by any change to Washington gambling law), and avoids years of additional litigation against a well-resourced adversary. The cost-risk-delay calculus weighs heavily in favor of preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(i).

### 2. The Method of Processing Claims and Distributing Relief to the Settlement Class Members Is Effective.

The next sub-factor evaluates whether the Settlement's proposed method of distributing relief is effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method "get[s] as

much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while ensuring that only "legitimate claims" are paid. 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:53 (6th ed. 2026). The proposed Settlement easily satisfies that standard.

The Settlement proposes to appoint JND Legal Administration as the Settlement Administrator. *See* Agreement § 1.40. JND is a well-respected class action settlement administrator that this Court has appointed to oversee notice and administration in several prior social casino settlements. *See, e.g.*, *Ferrando*, No. 22-cv-214-RSL, Dkt. #26; *Benson*, No. 18-cv-525-RSL, Dkt. #511 (W.D. Wash. Nov. 14, 2022); *Reed*, No. 18-cv-565-RSL, Dkt. #166; *see also Linehan v. AllianceOne Receivables Mgmt., Inc.*, No. 15-cv-1012-JCC, 2017 WL 3724819, at *2 (W.D. Wash. June 1, 2017).

The claims process is straightforward and Class-friendly. Amazon will provide the Settlement Administrator and Class Counsel with all Settlement Class Member contact information in its possession, including names, email addresses, default billing addresses, and information sufficient to calculate the Lifetime Spending Amounts for each Settlement Class Member. *See* Agreement § 4.1(a). The Settlement Administrator will use that data to construct the Class List by attaching to each unique Settlement Class Member his or her associated Application accounts, calculating each person's total Lifetime Spending Amount across all covered Applications, and categorizing each person according to the appropriate spending tier under the Plan of Allocation. *See id.* § 4.1(b). Because Amazon processed every in-Application virtual chip purchase at issue, its data should permit the Settlement Administrator to identify and assign spending tiers to substantially every Settlement Class Member without further input from the Class.

Settlement Class Members may submit a Claim Form electronically through the Settlement Website or by mail. *See id.* § 4.2(a). The Claim Form requests only the information necessary to verify the claim and to direct payment: the Class Member's legal name, the Application(s) played, the Amazon ID(s) and email address(es) associated with those

Applications, and a current contact and payment address. *See id.* § 1.10. Class Members may elect to receive their Settlement Payment electronically or by check. *See id.*

To ensure that only legitimate claims are paid, the Settlement Administrator will cross-reference each submitted Claim Form against the Class List built from Amazon's transaction data. *See id.* § 5.3. Where additional review is required, the Settlement Agreement designates Niki Mendoza of Phillips ADR (the mediator who facilitated the Parties' settlement negotiations) as the independent authority responsible for Final Claims Determinations, with her decisions non-appealable. *See id.* § 5.4. That mechanism gives the Settlement Class an experienced and neutral decisionmaker, while keeping disputes from delaying recovery for the broader Class.

Finally, the Settlement is designed to put money in Class Members' hands quickly and to keep distributing it as the Application Developer participation and assigned-claim-recovery process unfolds. Initial Settlement Payments will be made within ninety (90) days of the Effective Date, drawn from amounts contributed by Participating Application Developers under the Participation Form and Release framework. *See id.* § 2.4(c). Additional distributions will follow on a rolling basis as further developer payments and proceeds from the Edelson PC Amazon Social Casino Litigation Trust's pursuit of the Assigned Claims are received. *See id.* § 2.4(d). This rolling-distribution structure ensures that the Class begins receiving meaningful recovery promptly after final approval, even as the longer process of resolving claims against non-participating Application Developers continues.

In sum, JND Legal Administration is well-equipped to process Class Member claims and distribute relief effectively, ensuring that the substantial relief anticipated in the Settlement Agreement actually reaches the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

### 3. The Terms of the Requested Attorneys' Fees Are Reasonable.

The third sub-factor considers the adequacy of relief, taking into account "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Settlement's terms governing fees are reasonable, predicated on the substantial relief anticipated to the Settlement Class, and linked directly to the Class Members'

actual recoveries.

If the Settlement is preliminarily approved, proposed Class Counsel intend to petition the Court for an award of reasonable attorneys' fees and costs after the Settlement Class has received notice. The Settlement caps any fee petition at thirty percent (30%) of the Qualified Settlement Fund, plus reimbursement of expenses. *See* Agreement § 8.1. That cap falls comfortably within the range courts in this District have repeatedly found reasonable in social casino class settlements. *See, e.g.*, *Kater*, 2021 WL 511203, at *1 (noting that "contingency arrangements in high-stakes, high-value mass litigation typically fall in the range of 30–40%" and approving 25% fee award); *Benson*, 2023 WL 3761929, at *1-2 (awarding Class Counsel attorneys' fees of 29.3% of the $415 million common fund); *see also* 5 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 15:83 (6th ed. 2026) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund"). The 30% cap is therefore a ceiling well within the bounds of reasonable fee awards for litigation of this kind.

Two structural features of the fee provision merit particular attention. *First*, the Settlement contains no "clear sailing" provision. Amazon has expressly reserved the right to oppose the amount of fees proposed Class Counsel ultimately request. *See* Agreement § 8.1. Class Counsel's fee petition will therefore be tested on the merits, not waved through as part of the package. *Second*, fees will be paid on a rolling basis as funds are distributed to the Class, rather than in a lump sum at the outset. Class Counsel will not be paid up front. Class Counsel will be paid only as Settlement Class Members are paid, with each fee disbursement tracking the actual recovery received by the Class. That structure aligns Class Counsel's compensation directly with the success of the Trust's recovery effort and ensures that Class Counsel's interests remain tethered to the Class's interests throughout the years-long process of pursuing payment from the Application Developers through the Assigned Claims.

The fee provision contains no reversion: should the Court award less than 30% (or any percentage) of the Qualified Settlement Fund, any excess funds will remain in the Qualified Settlement Fund for distribution to Settlement Class Members. *See id.* § 8.1. Together, the

percentage cap, the absence of clear sailing, the rolling-payment structure, and the non-reversionary design ensure that the fee provision satisfies the structural protections this Court and the Ninth Circuit have identified as hallmarks of a fair settlement. *See In re Bluetooth*, 654 F.3d at 947. For these reasons, the Settlement's fee terms support preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

### 4. The Covenant Judgment and Assignment Structure Is Fair and Reasonable.

The structural feature that distinguishes this Settlement from the prior social casino developer settlements this Court has reviewed and approved is its use of a Covenant Judgment paired with an assignment of indemnification rights. That structure is well-suited to this case and gives Settlement Class Members the best chance at significant financial recovery—from the companies who took the majority of the revenue from the Settling Transactions. It is also a recognized mechanism under Washington law for resolving multi-party tort liability. *See* RCW § 4.22.060 *et seq*.; *Bird v. Best Plumbing Grp., LLC*, 175 Wash. 2d 756, 764–65 (2012) (describing the typical covenant-judgment structure of a consent judgment, covenant not to execute, and assignment of claims).

The fit between the structure and the facts of this case is strong. Amazon operated the platform on which the Applications were offered, served as the exclusive broker and processor of in-Application virtual chip purchases, and retained thirty percent (30%) of every Settling Transaction as its platform fee. The Application Developers created and operated the social casino Applications themselves and retained the remaining seventy percent (70%) of revenue. Under the Amazon Developer Services Agreement, each Application Developer agreed to indemnify Amazon against precisely the kind of liability at issue in this Action. *See* Agreement § 2.2(d).[5] While Plaintiff alleges that Amazon is a joint tortfeasor in the social casino industry

---

[5] *See also* ADSA (last updated April 1, 2026), available at: https://developer.amazon.com/support/legal/da ("You will indemnify, defend and hold us (including any respective officers, directors, employees, contractors and assigns) harmless from and against any loss, expense, claim, liability, damage, action or cause of action (including

EDELSON PC
150 California Street, 18th Floor, San Francisco, CA 94111
Tel: 415.212.9300 • Fax: 415.373.9435

and liable under both the RMLGA and the CPA, direct litigation against Amazon faces a number of hurdles as discussed above. This Settlement allows the Class to recover from other joint tortfeasors—the Application Developers—based on Amazon's strong contractual rights. That structure allows Class Members to trade a risky and difficult litigation against Amazon for far-less-risky enforcement of contractual indemnification rights in order to maximize their chances of recovering their losses.

The Agreement creates strong incentives for Application Developers to settle the Assigned Claims, including a discount on the Pro Rata Sub-Judgment amounts and the opportunity for significant savings moving forward by using an alternative payment processor within the Applications (thereby avoiding Amazon's 30% fee). Even as to Application Developers who decline to "participate" in the Settlement Agreement, the Trust's litigation of the Assigned Claims will be straightforward contract cases. Each Application Developer agreed, as a condition of distributing its apps through the Amazon Appstore, to indemnify Amazon against claims arising from those apps, and Amazon has represented and warranted that it possesses those indemnification rights against each Application Developer and that no separate agreement modifies them. *See id.* § 2.2(d). To enforce the indemnification provision, the Trust need only establish that the developer agreed to indemnify Amazon, that Amazon validly assigned that indemnification right to the Trust, and that the developer has not paid its share of the Covenant Judgment (*i.e.*, its Pro Rata Sub-Judgment, which has already been calculated based on Amazon's transaction data). Class Counsel accordingly anticipate that most Assigned Claims can be resolved on the pleadings or at summary judgment, without protracted discovery or trial. Amazon has agreed not to oppose, obstruct, or impede the Trust's enforcement efforts. To the contrary, Amazon has committed to respond to reasonable requests for information and documents and to consider reasonable requests to make relevant witnesses available. *See id.* § 2.2(e). While any litigation of course carries risks, the Settlement and the assignment of

---

reasonable attorneys' fees) that arises from any third-party claim relating to any Content or Device, or any breach of your representations, warranties or obligations set forth in this Agreement. . . .").

Amazon's indemnification rights will give the Class a far clearer path to financial recovery than direct, class action litigation against Amazon.

The proposed assignment to the Edelson PC Amazon Social Casino Litigation Trust adequately protects the interests of the Settlement Class. *See id.* § 2.2(c). The Settlement Class is the sole beneficiary of the Trust, which will be administered by Cathy Yanni of JAMS—an experienced and highly respected neutral. *See id.* § 1.18. Edelson PC will serve as mandatory counsel to the Trust, ensuring that the Settlement Class continues to be represented by the same firm (and several of the same lawyers) who litigated and settled this case and who have litigated against social casino developers in this District for years. And under the Agreement, Class Counsel agrees not to collect any Court-awarded attorneys' fees until the Class also recovers money on the Assigned Claims, ensuring that the interests of Class Counsel, the Trust, and the Class remain aligned throughout the litigation of those Assigned Claims.

The amount of the Covenant Judgment and Pro Rata Sub-Judgments are also fair and reasonable. While the $201,355,607.75 Covenant Judgment is certainly a hefty sum, there is nothing arbitrary or inflated about it. As explained above, the Covenant Judgment amount is equal to thirty percent (30%) of the total Settling Transactions during the Class Period (that is, the sum of all qualifying in-Application virtual chip purchases on the Amazon Appstore from November 10, 2019, through November 10, 2025), as calculated from Amazon's own transaction data. *See* Agreement §§ 1.15, 1.38. The amount thus falls squarely within the range of prior social casino settlements in this District, which ranged from roughly 15% to 30% of the Class's alleged damages (*i.e.*, the aggregate spending in the at-issue social casino apps during the relevant period). The Pro Rata Sub-Judgments against each Application Developer are likewise calculated from Amazon's transaction data, fixed in advance based on each developer's proportionate share of the Settling Transactions. *See id.* § 1.15. Because the Pro Rata Sub-Judgments are tethered to actual revenue, no developer will face a judgment exceeding its share of the proceeds it generated through the Applications. Application Developers will receive notice of the Agreement prior to entry of the Covenant Judgment, *see* Agreement § 4.4, and Plaintiff

plans to seek a finding of reasonableness pursuant to RCW § 4.22.060 and *Chaussee v. Maryland Cas. Co.*, 60 Wash. App. 504, 512, *opinion modified on denial of reconsideration*, 812 P.2d 487 (Wash. Ct. App. 1991). But for purposes of preliminary approval and sending out notice, the structure and amount of the settlement is fair, reasonable, and well within the range of final approval.[6]

### E. The *Churchill* Factors Likewise Support Preliminary Approval.

Finally, in weighing preliminary approval, courts consider "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Cottle*, 340 F.R.D. at 373 (quoting *Churchill*, 361 F.3d at 575). These factors overlap substantially with the Rule 23(e)(2) analysis above, and each favors approval for the reasons already discussed. *See supra* Sections II.A-II.D. The remaining factors do not counsel otherwise: there is no governmental participant, and the reaction of the Class cannot be assessed until Class Members receive notice, which is the relief this motion seeks. On balance, the *Churchill* factors confirm that preliminary approval is warranted.

### III. The Court Should Approve the Proposed Notice Plan.

Upon certification, Due Process and Rule 23 require the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 779 (9th Cir. 2022) ("Procedural due process requires that the notice be reasonably calculated, under all the circumstances, to

---

[6] The final subfactor of Rule 23(e) requires the Court to consider any other agreements between the parties made in connection with the proposed settlement. Other than the Settlement Agreement and its exhibits—such as the proposed Covenant Judgment and Covenant Not to Execute—there are no other agreements regarding this settlement between Plaintiff, the Settlement Class, Class Counsel, or the Trust on the one hand, and Defendant Amazon (or any of the Application Developers) on the other.

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). The Notice Plan here satisfies both standards.

### A. The Notice Plan for the Settlement Class is More than Adequate.

The Parties have agreed upon a multi-part Notice Plan to be carried out by JND Legal Administration, the same well-respected class action settlement administrator this Court has appointed in several prior social casino settlements before it. *See, e.g.*, *Ferrando*, No. 22-cv-214-RSL, Dkt. #26 (appointing JND); *Benson*, No. 18-cv-525-RSL, Dkt. #511 (W.D. Wash. Nov. 14, 2022) (same); *Reed*, No. 18-cv-565-RSL, Dkt. #166 (same).

To facilitate notice, Amazon has agreed to provide the Settlement Administrator and Class Counsel with all Settlement Class Member contact information in its possession, including names, email addresses, default billing addresses, and Lifetime Spending Amounts for each Settlement Class Member. *See* Agreement § 4.1(a). Because Amazon is the platform operator, processed every in-Application virtual chip purchase at issue, and maintains the customer accounts associated with those purchases, this data should permit direct notice to substantially all Settlement Class Members. *See id.* § 4.1(b). The Settlement Administrator will use this information to create the Class List, attach to each unique Settlement Class Member his or her Application accounts, calculate each person's total Lifetime Spending Amount, and categorize each person according to the Plan of Allocation. *See id.*

No later than the Notice Date, the Settlement Administrator will use the Class List to send notice via email substantially in the form attached to the Agreement as Exhibit E, along with an electronic link to the Claim Form, to all Settlement Class Members for whom a valid email address is available. *See id.* § 4.2(a). If a transmission results in a "bounce-back," the Settlement Administrator will, where reasonable, correct any issues that may have caused the bounce-back, attempt to re-send the email notice, and, where possible, send notice via First Class U.S. Mail to the associated mailing address. *See id.* The Settlement Administrator will also, where possible, send notice via First Class U.S. Mail to all Settlement Class Members with a Lifetime Spending Amount greater than $100.00. *See id.* Based on the data Amazon possesses,

as well as the notice campaigns in prior developer settlements using the same type of data from platforms (including Amazon), Class Counsel anticipates that hundreds of thousands of accounts associated with Settlement Class Members will receive direct notice. *See* Logan Decl. ¶ 15. Prior to mailing, the Settlement Administrator will update mailing addresses through the National Change of Address database and will take reasonable steps to obtain corrected addresses for any returned mailings. *See* Agreement § 4.2(b).

The Settlement Administrator will also send reminder notices, both thirty (30) days and seven (7) days before the Claims Deadline, to every Settlement Class Member with a valid email address. *See id.* § 4.2(c). Within seven (7) days of preliminary approval, the Settlement Administrator will establish a Settlement Website, which will activate the ability to file Claim Forms online. *See id.* § 4.2(d). The notice provided on the Settlement Website will be substantially in the form of Exhibit C to the Agreement and will advise the Settlement Class of the total value of the Settlement Fund.

The Settlement Administrator will supplement the direct notice program with a digital publication notice campaign that will deliver more than ten million (10,000,000) impressions to likely Settlement Class Members. *See id.* § 4.2(e). The digital publication campaign will be targeted, to the extent reasonably possible, to the United States, will run for at least one month, and will contain active hyperlinks to the Settlement Website. *See id.*

In addition to reaching the Settlement Class, notice is adequate when it provides class members with the information necessary to make an informed decision in language that can be readily understood by the average class member. *See generally* 3 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 8:17 (6th ed. 2026). The format and language of each form of notice here have been carefully drafted in straightforward, easy-to-read language, and all information required under Rule 23 is present. *See* Exhibits C-E to the Agreement.

The Claims Deadline and the Objection/Exclusion Deadline will fall fifty-six (56) days after the Notice Date. *See* Agreement §§ 1.11, 1.28. That timeline gives Settlement Class Members ample opportunity to evaluate the Settlement, consult counsel, submit claims, and

submit any objections or requests for exclusion. In addition, Class Counsel will file a motion for attorneys' fees prior to the Objection/Exclusion Deadline. *Id.* § 1.28.

**B. The Notice Provided to the Application Developers Is More than Adequate.**

The Settlement Agreement also provides for notice to the Application Developers and for a reasonableness hearing under RCW § 4.22.060, given that the structure involves an agreed Covenant Judgment (to be entered following final approval) and assignment of indemnification rights against those developers. *See* RCW § 4.22.060(1) (requiring that covenant judgments be found reasonable before entry, with affected parties given notice and an opportunity to be heard); *Bird*, 175 Wash. 2d at 765-67, 774 (applying RCW § 4.22.060 reasonableness hearings to covenant judgments, identifying "the interests of the parties not being released" among the reasonableness factors, and holding that due process "is satisfied by notice and an opportunity to intervene in the underlying action"); *see also* Order Denying Motion to Reconfirm Reasonableness of Settlement and Vacating Judgment ("*Reed Hein* Order"), *Adolph v. Reed Hein & Assocs.*, No. 2:21-cv-01378-BJR, Dkt. #84 at 4 (W.D. Wash. June 5, 2026) (vacating covenant judgment where judgment amount never subjected to adversarial testing and affected third party had no opportunity to participate).

No later than the Notice Date, Class Counsel will provide written notice to each Application Developer of this Settlement, including the date of the Final Approval Hearing and the fact that Plaintiff will request entry of the Covenant Judgment and each Application Developer's Pro Rata Sub-Judgment as part of that Final Approval Hearing. *See* Agreement § 4.4; Logan Decl. ¶ 20, Exhibit 2 (proposed notice to Application Developers). Amazon also has the option, prior to the formal Notice Date, to send each Application Developer an initial, non-court-ordered notice informing it of the opportunity to execute a Participation Form and Release. *See* Agreement § 4.3. The Application Developers will therefore receive notice well in advance of the Final Approval Hearing, which is far more than what is required to satisfy due process in analogous reasonableness-hearing contexts. *See Starr Indem. & Liab. Co. v. PC Collections, LLC*, 25 Wash. App. 2d 382, 408 (2023) (two weeks' advance notice of RCW §

4.22.060 reasonableness hearing satisfied due process; collecting cases approving even shorter notice periods). And at final approval, Plaintiff will ask the Court to determine that the Covenant Judgment and each Pro Rata Sub-Judgment is reasonable under RCW § 4.22.060, including because the amounts are calculated based on Amazon's transaction data showing each of the Settling Transactions and each Application Developer's proportionate share thereof and on the market established by six other class action settlements against social casino developers approved by this Court. *Cf. Reed Hein* Order at 3 (vacating covenant judgment in *Adolph*, where the settlement agreement "contained no settlement amount" and the figure was calculated by counsel after execution). Under the Settlement Agreement here, no Pro Rata Sub-Judgment will be entered against any Application Developer who has not first received written notice of the proposed amount and an opportunity to appear and be heard.

Because the proposed methods for providing notice to the Settlement Class and to the Application Developers comport with both Rule 23 and Due Process, the Court should approve the Notice Plan.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (i) certify the proposed Settlement Class; (ii) grant preliminary approval of the Settlement; (iii) appoint Steven Horn as Class Representative; (iv) appoint Todd Logan, Brandt Silverkorn, Amy B. Hausmann, and Lauren Blazing as Class Counsel; (v) approve the proposed Notice Plan; and (vi) schedule the final approval hearing.

Respectfully submitted,

**STEVEN HORN**, individually and on behalf of all others similarly situated,

Dated: July 9, 2026

By: /s/ Todd Logan
*One of Plaintiff's Attorneys*

Todd Logan, WSBA #60698

tlogan@edelson.com
Brandt Silverkorn*
bsilverkorn@edelson.com
Lauren Blazing*
lblazing@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9495

Amy B. Hausmann*
abhausmann@edelson.com
EDELSON PC
350 N LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

By: /s/  Cecily C. Jordan

Cecily C. Jordan, WSBA #50061
cjordan@tousley.com
TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Tel: 206.682.5600

*Attorneys for Plaintiff Horn*

*Admitted pro hac vice*

**CERTIFICATION**

I certify that this memorandum contains 15,319 words, in compliance with the Court's Order Granting Plaintiff's LCR 7(f) Motion for Leave to File Over-Length Brief (Dkt. #126).

/s/ Todd Logan